## STATE V. MULCH.

1. In a prosecution for rape it was error to refuse to permit a female witness for the state, and in whose presence it was claimed the offense was committed, to be asked on cross examination whether or not she had not been promised by the state's attorney fees of $1 a day while she was in jail for the purpose of testifying in the cause, for the purpose of effecting her credibility.

2. Where, in a prosecution for rape, the state claimed that defendant had given prosecutrix money in consideration of her consent to sexual intercourse, the defendant, though admitting the giving of money, claimed it was given to prosecutrix and her companion at their solicitation and representation that they had been robbed, which representations they denied, evidence of a third person concerning a conversation with prosecutrix and her companion in defendant's presence at the time the money was paid, tending to show that they stated they had been robbed, was admissible as res gestæ.

(Opinion filed July 29, 1903.)

Error to circuit court, Lawrence county; Hon. WILLIAM G. RICE, Judge.

17 S. D.—21

.     John Mulch was convicted of assault with intent to commit rape, and he brings error,   Reversed.

*Joseph B. Moore, Thomas E. Harvey,* and *Ivan W. Goodner,* for plaintiff in error.

*Philo Hall, Atty. 'Gen.* and *William H. Parker, State's Atty.,* for the state.


HANEY, P. J.   The defendant who was charged with rape upon a female under 16 years of age, and found guilty of an assault with intent to commit rape, brings this action here for review upon writ of error to the circuit court of Lawrence county.

The date of the crime, if any was committed, was October 5, 1902.   The prosecutrix's mother testified that her daughter was born June 10, 1888, and was consequently under 16 years of age.   The girl testified that she first met the defendant in a restaurant in Deadwood, where he entertained her and one Lillian McCormick at dinner; that he told her that, if she would come to his place of business on the next Sunday and have sexual connection with him, he would pay her $5; that she and Lillian went to defendant's room, at the rear of a saloon, in the forenoon of the following Sunday, where the defendant and the prosecutrix had sexual intercourse in the immediate presence of the other girl; that the defendant gave the girls money to pay for their dinners; that after dinner both girls returned to defendant's room, where he and the prosecutrix again had sexual intercourse in the presence of Lillian; and that defendant paid the prosecutrix $5 as he had previously promised to do.   Lillian, aged 18, as a witness for the state, testified to the same state of facts.   Others testified to having seen the girls

go to and from the defendant's room on the day the crime was alleged to have been committed. The defendant, who became a witness on his own behalf, admitted that the girls came to his room and that he gave them money, but he denied having then or at any time had sexual intercourse with the prosecutrix, and stated that he gave the girls money because they solicited it upon the representation that they had been recently robbed. Both girls denied having told defendant anything about being robbed.

The witness Lillian McCormick was asked the following question on cross-examination, to which the state objected as incompetent, immaterial, and not proper cross-examination, and the objection was sustained: "Were you promised by Col. Parker [state's attorney] fees of a dollar a day while you were in jail here for the purpose of testifying in this case?" It is elementary that a witness may be cross-examined touching his pecuniary interest, if any, in the event of an action. Nothing, we apprehend, tends more strongly to destroy the credibility of a witness than to show that his testimony is or may be influenced by a pecuniary consideration. As stated by Mr. Jones in his valuable work on Evidence: "The cross-examination would be of little value if the witness could not be freely interrogated as to his motives, bias, and interest, or as to his conduct as connected with the parties or the cause of action; and there would be little safety in judicial proceedings if an unscrupulous witness could conclude the adverse party by his statements denying his prejudice or interest in the controversy." Jones on Evidence, § 829. Of course, there must necessarily be a limit to any cross-examination, and ordinarily the extent to which one should be pursued rests in the sound legal dis-

cretion of the trial court; but this does not justify the exclusion of all inquiry touching any matter which is recognized as affecting the credibility. It may be conceded that the witness in this case was shown to be an unchaste, immoral and abandoned woman, but such a witness might be believed by a jury that would give no credence to a witness who proved to be testifying for a financial consideration. For the purpose of this discussion, it must be assumed that the witness would have answered the question in the affirmative. Then the fact would have appeared that she was promised $1 a day while in jail for testifying on the trial. It is unnecessary to determine whether or not the amount promised exceeded the fees to which she was lawfully entitled. She may or may not have known her legal rights in this respect. The question is, what effect did the promise have upon her testimony? This was a question going to her credibility, which was of the utmost importance, and upon which the jury were entitled to all the light obtainable by a reasonably extended investigation. The failure to allow any investigation along this line was not cured by other evidence, so far as we are able to discover. That the question was propounded in good faith appears from the affidavit of the clerk of courts, used on the motion for a new trial, wherein he states that a certificate was issued to the witness, on the order of the state's attorney, for $128, in payment of 128 days' attendance on the circuit court in this and another case. We have no doubt but that an investigation of this matter would show that the state's attorney's conduct was entirely proper. As heretofore suggested, that is not the question at issue. It is simply this: Did the witness understand that it was to her pecuniary advantage to testify in this case on be-

half of the state, and did such understanding affect her testimony? This was a proper subject for inquiry on cross-examination, and we cannot escape the conclusion that the learned circuit court committed a reversible error in not permitting an answer to the question as propounded by the defense.

Elmer Sours, a witness for the defense, testified that he saw the prosecutrix and Lillian McCormick at the defendant's room on the day when the crime was alleged to have been committed; that they were standing six or eight feet from the defendant, looking through the window; and that he had a conversation with them. After several questions intended to bring out this conversation were ruled out, the following question was asked: "What, if anything, did they say to you at that time about having been robbed, within the hearing of the defendant?" To that question the state objected and the objection was sustained. This ruling was, we think, erroneous. It was claimed by the accused that he gave the girls money because they stated they had been robbed. In corroboration of his testimony in this respect, it was, we think, relevant and material to show by other witnesses that the girls, at the time and place of the alleged crime, stated that they had been robbed. Indeed, all that was said and done by either the prosecutrix, the witness Lillian McCormick, or the defendant, while the girls were in the defendant's room, was clearly relevant and material as part of the *res gestae*.

Numerous other errors are assigned, and questions discussed in the briefs of counsel, concerning which no opinion is expressed, as they merely involve the application of well recognized rules of criminal procedure, and may not arise on a second trial. It may not be improper to observe that we

would be more reluctant than we are to reverse the judgment in this case, did it not so clearly appear that the jury failed to faithfully and intelligently discharge their duty. If they believed the witnesses for the state, they should have found the defendant guilty of rape; if they did not, they should have found him not guilty of any offense. We do not reverse for this reason, but cannot refrain from suggesting that upon the evidence in this case the verdict is not one which appeals to the legal mind as being worthy of the highest consideration.

The judgment of the circuit court is reversed, and a new trial ordered.