PEOPLE v. LORIS.

(Supreme Court, Appellate Division, Second Department. March 5; 1909.)

1. WITNESSES (§ 355*)—IMPEACHMENT—REPUTATION—COMPETENCY OF IMPEACHING WITNESS—"NEIGHBORHOOD."

The term "neighborhood," in the rule that a person called to impeach the reputation of a witness must reside in the neighborhood of the residence of the witness, comprises the natural radius of repute, and includes the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

territory wherein one resides, moves, circulates, does business, and has intercourse with his fellows; and it is not confined to the same village, town, or city, and a person residing in a town less than 14 miles distant from a town in the same county in which a witness resides may testify as to the reputation of the witness, especially where he does business in the latter town.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 355.*

For other definitions, see Words and Phrases, vol. 5, pp. 4773–4775.]

2. CRIMINAL LAW (§ 304*)—EVIDENCE—JUDICIAL NOTICE—LOCATION OF CITIES.
The court may take judicial notice that towns are adjoining towns in the same county.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 705; Dec. Dig. § 304.*]

3. WITNESSES (§ 355*)—IMPEACHMENT—PROOF OF REPUTATION.
The court will not permit a stranger to testify as to the general reputation of a witness, based on inquiry; but otherwise it will not determine by preliminary inquiry whether the impeaching witness has sufficient knowledge of the fact to enable him to testify, but will leave the value of the testimony to the jury.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 355.*]

4. CRIMINAL LAW (§ 1168*)—HARMLESS ERROR—EVIDENCE—ADMISSIBILITY.
Where it does not appear that a witness, rejected as incompetent, knew or could testify to the matter under inquiry, no exception to the rejection lies.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1168.*]

5. CRIMINAL LAW (§ 555*)—EVIDENCE—WEIGHT.
The testimony of a private detective, employed to procure evidence of illegal sales of liquor, must be received with great caution and distrust, though he is not an accomplice, nor an odious witness, whose testimony is to be disregarded.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 555.*]

6. WITNESSES (§ 369*)—INTEREST—EVIDENCE—ADMISSIBILITY.
Though a private detective, employed to procure evidence of crime, testified that he was fully paid, and was not to receive any further compensation contingent on a conviction, accused was entitled to prove the amount of the compensation, together with the time of payment, as bearing on the eagerness of the detective to show that his work was successfully done, together with the fact that the time of payment might indicate that his compensation was contingent.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1187; Dec. Dig. § 369.*]

Appeal from Suffolk County Court.

Joseph Loris was convicted of selling intoxicating liquors without a license, and he appeals. Reversed, and new trial ordered.

Argued before HIRSCHBERG, P. J., and WOODWARD, GAYNOR, JENKS, and MILLER, JJ.

Martin T. Manton, for appellant.

George H. Furman, for the People.

JENKS, J. The defendant appeals from a judgment of the county court that convicts him of the crime of selling intoxicating liquor without a license. Mr. Sawyer, the private detective and decoy in the case, called by the people, was the sole witness to the act of sale. The defendant's witness, Mr. Sweezey, who testified that he resided in River-

head, and that from his boyhood up he had known Mr. Sawyer, was asked whether he knew Mr. Sawyer's general reputation for truth and veracity in the community in which he lived; but an objection to the question was sustained, under exception, on the ground that it appeared from the evidence of Mr. Sawyer that he had not resided in Riverhead for 16 years, and that he did not show acquaintance with the speech of people in Southampton (Mr. Sawyer's place of residence), or show that he had been a resident thereof. This witness then testified that he was a merchant, and that he did business in Southampton, where he went once or twice a month. Thereupon he was asked, "Do you know the general reputation of William Sawyer in the community in which he lives?" But an objection thereto, on the grounds of irrelevancy, incompetency, and immateriality, was sustained under exception. I think that this ruling was error. The question was entirely proper in itself. Carlson v. Winterson, 147 N. Y. 656, 42 N. E. 347.

And the circumstance that the witness did not reside in Southampton did not make him incompetent. It is declared by an eminent writer upon Evidence that ordinarily the witness who speaks to reputation should be of the same "neighborhood." Greenleaf on Evidence (15th Ed.) 451, and cases cited. But the term thus used comprises the natural radius of repute. It is not confined necessarily to the same hamlet, village, town, or city. Blackstone says that jurors must be "of the visne or neighborhood, which is interpreted to be the county where the fact is committed." 4 Com. 350, quoted in People v. Powell, 87 Cal. 348, 25 Pac. 481, 11 L. R. A. 75, cited in "Words and Phrases Judicially Defined." And other cases are likewise cited which show the elasticity of the term as comprising the territory wherein the person in question resides, moves, circulates, does business, and has intercourse with his fellows. State v. Henderson, 29 W. Va. 147, 1 S. E. 225; Peters v. Bourneau, 22 Ill. App. 177. In Chess v. Chess, 1 Pen. & W. (Pa.) 32, 21 Am. Dec. 450, a county was thus included. In Hadjo v. Gooden, 13 Ala. 718, the witness lived 12 miles distant. In Dupree v. State, 33 Ala. 380, 73 Am. Dec. 422, the distance was 20 miles. In State v. McLaughlin, 149 Mo. 19, 50 S. W. 315, it was 5 miles. In Wallis v. White, 58 Wis. 26, 15 N. W. 767, the respective residences were in different wards of the same city. Some of these cases are cited by another eminent writer on Evidence. Burr-Jones, Ev. (2d Ed.) 1097. The court could take judicial notice that Riverhead and Southampton are adjoining towns of the same county, less than 14 miles apart. Chamberlayne's Best on Evidence (International Ed.) p. 255, and cases there cited. And, moreover, there was evidence that the witness did business in the town of residence.

The rule is that the court will not permit a stranger sent out by the adverse party to testify as to the result of his inquiry; "but otherwise the court will not undertake to determine by preliminary inquiry whether the impeaching witness had sufficient knowledge of the fact to enable him to testify, but will leave the value of his testimony to be determined by the jury." Greenleaf, Ev. p. 610, citing Bates v. Barber, 4 Cush. (Mass.) 107. Of course, if it did not appear that the witness

knew or could testify to the matter under inquiry, no exception to his rejection would lie. Bates v. Barber, supra; Greenleaf, supra. Burr-Jones on Evidence, supra, says:

"It is not a condition to the competency of the impeaching witness that he should reside in the same neighborhood."

The evidence sought was not cumulative; indeed, the learned court charged the jury that there was no testimony that tended to impeach Mr. Sawyer. As the fact of the sale virtually rested upon the testimony of Mr. Sawyer, the importance of his impeachment to the defendant is manifest. And although Mr. Sawyer was neither an accomplice, nor an odious witness, whose testimony was to be discredited (Rapalje on Witnesses, § 189, and authorities cited), yet, in view of his employment as a detective, his testimony was to be received "with the greatest caution and distrust," said of a witness in a like case (Commonwealth v. Downing, 4 Gray [Mass.] 29).

I think that the defendant should have been permitted to show the amount of the compensation paid to Mr. Sawyer for his service. Mr. Sawyer testified on cross-examination that he was paid, and fully paid, and that he was not to receive any further compensation contingent upon a conviction; but the defendant was not permitted to ask the amount thereof, or the time of its payment. The inquiry into the matter of compensation was material (State v. Tosney, 26 Minn. 262, 3 N. W. 345), and I think that these further questions were proper. The amount of the compensation for such work might indicate eagerness to show that it was successfully done, so as to secure a conviction, or a natural desire for a retention in work highly paid, and the time of the payment might indicate that, despite the witness, the compensation was contingent upon some successful step in the prosecution of the crime.

I think that the judgment should be reversed, and a new trial should be ordered. All concur.

———

### In re PECK'S ESTATE.

(Supreme Court, Appellate Division, Second Department. March 5, 1909.)

1. COURTS (§ 202\*) — SURROGATE COURTS — MODIFICATION OF JUDGMENT — PROCEEDINGS.

    [Ed. Note.—For other cases, see Courts, Cent. Dig. § 485; Dec. Dig. § 202.\*]

2. COURTS (§ 202\*) — SURROGATE'S COURT — MODIFICATION OF JUDGMENT—JUDICIAL POWER.

    The power conferred on the surrogate by Code Civ. Proc. § 2481, subd. 6, to modify a decree for fraud, newly discovered evidence, clerical error,