[No. 15285. Department Two. July 21, 1919.]

## CHARLES A. ANDERSON, *Appellant*, v. RUCKER BROTHERS, *Respondent*.[1]

PLEADING (190)—VARIANCE—ITEMS OF DAMAGE. Where a complaint for overflowing farm lands specifically alleges with great particularity the various items of damages claimed, it is not error to exclude evidence of damage by the deposit of sand and gravel on the land, to which the complaint made no reference, in the absence of a request for leave to amend.

WATERS AND WATER COURSES (72-74)—FLOWAGE—DEGREE OF CARE. One who impounds the waters of a stream is required to exercise such reasonable care and caution in the construction, maintenance and operation of the dam as a reasonable, careful, and prudent man acquainted with the nature and habits of the stream would exercise under like circumstances, not only as to ordinary conditions but as to such unusual and extraordinary floods as such a careful man would reasonably expect; but he is not an insurer or liable for acts of God or floods that would not be anticipated by a reasonably prudent man.

SAME (74)—FLOWAGE—INSTRUCTIONS. In an action for overflowing farm lands by the negligent construction of a dam that gave way, instructions which as a whole required that defendant's dam must be sufficient to withstand all such freshets and floods as an ordinarily prudent person, having knowledge of the conditions, would expect to occur, are as favorable to plaintiff as he could ask.

SAME (74). Such instructions are sufficient notwithstanding a somewhat unfortunate use of words in referring to "unusually high freshets" which would not have been reasonably expected, where it was plain that unprecedentedly high freshets was meant; and notwithstanding they were subject to some criticism in not more fully expressing that the reasonably prudent person mentioned should be one who knew the country and the nature and habits of the stream; especially in the absence of any request for amplification of any indication that the jury was misled.

SAME (74). In such a case, the instructions are not objectionable in that they refer to such care as an ordinarily prudent man would exercise in like conditions "when the risk is his own;" since the expression did not refer to such care as would be exercised if the land were his own, but if the risk of being held in damages were his own.

[1] Reported in 183 Pac. 70; 186 Pac. 293.

Appeal from a judgment of the superior court for Snohomish county, Pemberton, J., entered September 27, 1917, upon the verdict of a jury rendered in favor of the defendant, in an action in tort. Affirmed.

*Hathaway, Beebe & Hathaway* and *J. Y. Kennedy,* for appellant.

*Coleman & Fogarty* and *W. P. Bell,* for respondent.

*Peters & Powell,* amici curiae.

*Walter F. Meier* and *Frank S. Griffith,* amici curiae.

BRIDGES, J.—Suit for damages caused by overflow. The respondent was engaged in the logging and lumbering business. To assist it in its operations, a number of years prior to March, 1916, it built a dam near its works for the purpose of creating a back-water pond. In order to do this it dug a ditch from Lake Hanson creek to Worthy creek, in Snohomish county, and dug another ditch from Worthy creek to its dam. The purpose of these ditches was to divert a part or all of the water of these two creeks to its dam for the purpose of creating the pond. The pond thus created covered from five to fifteen acres of land, and was from three to six feet in depth. The appellant owned a farm about three-quarters of a mile below the respondent's pond. The complaint alleged that, during the month of March, 1916, through the carelessness and negligence of the respondent in constructing the dam, and in failing to properly maintain and keep the same in repair, and because it had become old and insufficient, the dam and the gates thereof gave way and released large quantities of water stored thereby, which waters were flooded over the appellant's land, causing damage thereto for which he sought recovery. The case was tried by a jury, which returned a verdict in favor of respondent. Judgment

was entered on this verdict, and the appeal is from that judgment.

I.  At the trial the appellant offered evidence tending to prove that the flood waters caused by the breaking of the dam had deposited on the appellant's land sand and gravel.  The trial court sustained objections to this testimony on the ground that it was not within the pleadings.  The complaint very particularly mentioned the features of damage.  It alleged that,

"The top soil of plaintiff's premises was eroded and washed out, to the plaintiff's damage in the sum of nine hundred and sixty dollars ($960) ; a certain creek running through the plaintiff's premises was filled up with stumps and other debris, for a distance of about 160 rods, to the plaintiff's damage in the sum of three hundred and fifty dollars ($350) ; two bridges were washed out, to the plaintiffs damage in the sum of twenty-five dollars ($25) ; ten rods of puncheon were washed out, to the plaintiff's damage in the sum of twenty-five dollars ($25), together with about one hundred feet of fence, to the plaintiff's damage in the sum of twenty dollars ($20)."

It will thus be seen that, although the complaint very specifically alleges the various items of damage, it wholly fails to refer to any deposit of sand or gravel on the land.  A bill of particulars could not have more definitely given the various items for which recovery was sought, and where there is a bill of particulars, proof will be restricted to the matters therein set out. *Powers v. Washington Portland Cement Co.,* 79 Wash. 1, 139 Pac. 615.  In the case of *Eckhart v. Peterson,* 94 Wash. 379, 162 Pac. 551, this court held that, where the complaint sets out the specific items of damage, the plaintiff will not be permitted, over objection, to prove other items. *Horton v. Seattle,* 53 Wash. 316, 101 Pac. 1091.

If the appellant had asked to have his complaint amended so as to include this item of damage it would have been the duty of the court to have granted the permission, unless it appeared that the respondent would have been misled, taken by surprise, or injured thereby. But appellant did not ask the amendment. Clearly, the offered proof was not within the pleadings, and the court did not err in its ruling.

II. The appellant next complains of certain instructions given by the court to the jury on the duty of respondent in the construction and maintenance of the dam. The instructions complained of, the wording of which we will presently notice, the appellant claims did not impose upon the respondent a proper or sufficiently high degree of care.

A few of the earlier cases seem to have held that one creating a pond of water by means of a dam does so at his own peril, and can defend against a claim for damages because of flooding, only on the ground that the damage was caused by an act of God. *Fletcher v. Rylands,* L. R., 1 Exch. 265; *Defiance Water Co. v. Olinger,* 54 Ohio St. 532, 44 N. E. 238, 32 L. R. A. 736. But the more recent and, unquestionably, the greater weight of authority holds to a less strict and, we believe, a much more just rule of liability, and one which, while properly protecting the rights of others, encourages business development. That rule is that one who, by means of a dam, impounds the water of a stream is required to exercise such reasonable care and caution in the construction, maintenance and operation of the dam as a reasonably careful and prudent man who was acquainted with the nature and habits of the stream, the features of the surrounding country, the snow and rainfalls, and other conditions likely to cause freshets, would exercise under like circumstances. This rule would cover the stream not

only in its ordinary and usual condition as to water, but also when in such unusual and extraordinary flood and freshets as such careful and prudent man would reasonably expect; but the dam owner would not be negligent in failing to provide against unprecedented floods or freshets or act of God. *Maplewood Farm Co. v. Seattle,* 88 Wash. 634, 153 Pac. 1061; *Dahlgren v. Chicago, Milwaukee & St. Paul R. Co.,* 85 Wash. 395, 148 Pac. 567; *Kuhnis v. Lewis River Boom & Logging Co.,* 51 Wash. 196, 98 Pac. 655; 40 Cyc. 683; 13 Am. & Eng. Ency. Law (2d ed.), 688; 3 Farnham, Waters, p. 2798; *Columbus & W. R. Co. v. Bridges,* 86 Ala. 448, 5 South. 864, 11 Am. St. 58; *Todd v. Cochell,* 17 Cal. 98.

Let us see if the court's instructions, taken as a whole, will measure up to these requirements.

In its instruction number five, the court instructed the jury that "if the defendant used ordinary care in constructing and maintaining said dam, that it is not liable and your verdict must be for the defendant. I further instruct you that ordinary care means such care as ordinarily prudent men would exercise under like conditions when the risk is their own." The trial court's instruction number six was to the effect that the defendant would be required to use

"ordinary care, that is, that degree of care which an ordinarily prudent person would use under the same or similar circumstances, and, under this rule, the dam must be sufficient to withstand not only the usual and ordinary freshets, but must also be sufficient to withstand such extraordinary freshets as an ordinarily prudent person would reasonably expect to occur. If you find from the evidence that there was an unusually large fall of snow in January and February, 1916, and that snow melted away very rapidly in March and caused unusually high freshets, such that an ordinarily prudent person, in the construction

and maintenance of the dam in question, would not reasonably have expected to occur, and caused the damage to plaintiff, if you find there was any damage, then in that event the plaintiff cannot recover and your verdict must be for the defendant.''

It has been held, time and again, that one maintaining a dam of this character is bound to use only reasonable care and prudence. The case of *Maplewood Farm Co. v. Seattle, supra,* was very similar to the case at bar. The court said:

''In the instruction defining negligence, the degree of care which the city was held to in building the superstructure was that of reasonable and ordinary care. The appellant requested an instruction which imposed on the city a higher degree of care than that of ordinary care in the construction of the superstructure. The instructions given correctly state the law.''

At page 688, vol. 13, Am. & Eng. Ency. Law (2d ed.), it is said:

''That rule in relation to the present subject [floods] requires that each proprietor in exercising his own rights in his own territory shall act with reasonable skill and care to avoid injury to others, and as an approximate rule for measuring that degree it is laid down to be such skill, care, and diligence as men of common and ordinary prudence in relation to similar subjects would exercise in the conduct of their own affairs.''

*Wolf v. St. Louis Independent Water Co.,* 10 Cal. 541. See, also, to the same effect, the cases hereinabove cited.

We have no doubt that all of instruction number five and all but the last paragraph of instruction number six properly state the law. In the latter portion of instruction number six, the trial court was somewhat unfortunate in the selection of his words. He instructed the jury that, if the melting snow ''caused

an unusually high freshet, such that an ordinarily
prudent person, in the construction and maintenance
of the dam in question, would not reasonably have ex-
pected to occur," then the plaintiff could not recover.
As such reasonably prudent person must of necessity
expect unusually high freshets, it is plain that the
court meant and referred to unprecedentedly high or
extraordinary freshets. In the earlier part of this in-
struction the court, in the same connection, spoke of
"extraordinary" high freshets, and it is plain that, in
the latter portion of the instruction, he used the ex-
pression "unusually high freshet" in the sense of
"extraordinary high freshet." It may be said generally
that there are three stages of freshets; the ordinary
freshet, the extraordinary freshet, and the unprece-
dented freshet. *Avery v. Vermont Electric Co.,* 75
Vt. 235, 54 Atl. 179, 98 Am. St. 818, 59 L. R. A. 817,
and especially the note at page 876 *et seq.* Such of
any of these freshets or floods as from climatic and
geographical conditions may reasonably be expected,
whether of frequent or infrequent occurrence, must be
taken into consideration in estimating hazards attend-
ing the obstructions of a water course. *Gulf Red
Cedar Co. v. Walker,* 132 Ala. 553, 31 South. 374; *Ohio
& M. R. Co. v. Ramey,* 139 Ill. 9, 28 N. E. 1087, 32
Am. St. 176; *Van Duzer v. Elmira, C. & N. R. Co.,* 75
Hun 487, 27 N. Y. Supp. 474; *Chicago, B. & Q. R. Co.
v. Schaffer,* 26 Ill. App. 280.

Taking these instructions as a whole, it is perfectly
plain that the court instructed that respondent's dam
must be sufficient to withstand all such freshets or
floods as an ordinarily prudent person, having knowl-
edge of the conditions, would have expected to occur.

We think the court's instructions may be open to
some criticism because they did not express more fully

the idea that the reasonably prudent person therein mentioned should be a person who knew the surrounding country, the nature and habits of the stream, the likelihood of snow and rainfall, etc. But the court in instruction five told the jury that ordinary care meant such care as an ordinarily prudent man would exercise "under like conditions," and in instruction number six the court spoke of ordinary care as meaning such care as an ordinarily prudent person would use under "the same or similar circumstances." The court unquestionably meant, and the jury must have understood, by the expression "like conditions" and "same or similar circumstances," the same thing as though the court had expressly required of such prudent person knowledge of the nature and habits of the stream, the snow and rainfall, and other surrounding circumstances and conditions. If the appellant had requested the court to amplify these instructions in this regard, it would doubtless have so done. But, taken as they were given by the court, we cannot conceive that the jury was misled. It would be absurd and against all rules of common sense for this court to reverse on all technical and minor inaccuracies found in the trial court's instructions to the jury. In the rush of trial, that court has not opportunity to mold every word of its instructions to nicety of meaning or express itself in language of exact fitness. The instruction will be sufficient if it give the law in such way as that the jury will understand and will not be misled.

III. The appellant further complains of that portion of instruction five which required the respondent to use such care as an ordinarily prudent man would exercise in like conditions "when the risk is his own." Reference is made to a quotation from *Gulf, Colorado*

& S. F. R. Co. v. Pomeroy, 67 Tex. 498, found in the case of *Kuhnis v. Lewis River Boom and Logging Co.*, *supra.* The appellant misconstrues the meaning of the expression "when the risk is his own." The court did not mean that the respondent should exercise such care as if the land which might be damaged were his own, but, on the contrary, meant likelihood of being held in damages because of injuring the land of someone else. This distinguishes the instruction of the court below from the Texas case above mentioned.

The appellant cites the case of *Dahlgren v. Chicago, Miwaukee & St. Paul R. Co.*, *supra,* and quotes from the syllabus of that case to the effect that the obstruction of a water course causing overflow to the lands of another is wrongful regardless of negligence, and that the instruction should eliminate the question of negligence under such circumstances. In that case the railroad company completely filled the bed of a small stream which had always drained flood waters from the plaintiff's land, and placed therein a tile opening which it was contended was of insufficient size to carry off the waters in times of freshet. The railroad company, in this court, complained that the instruction eliminated the question of negligence. On that point the court said:

"But if it be meant by this that it was necessary for the respondents to show, in addition to the fact that the construction of the embankment caused them an injury, that the work of construction was performed in a negligent manner, we cannot agree with the contention. It is doubtless true, as the appellant argues, that it had a lawful right to construct an embankment for the use of its railway, but it does not follow that it had a lawful right to construct it in such a manner as to cause injury to the property of the respondents."

There is nothing in that case contrary to what we have here said.

The appellant makes some contention that the verdict of the jury was against the weight of the evidence. We have carefully read the testimony, and while there was a very serious conflict, we cannot say that it preponderated in favor of the appellant. It was a case to go to the jury, and the jury having found against the appellant, we will not disturb the verdict. We see no reason for reversing the case.

Judgment affirmed.

HOLCOMB, C. J., FULLERTON, PARKER, and MOUNT, JJ., concur.

## ON REHEARING.

[*En Banc.* December 10, 1919.]

BRIDGES, J.—Upon rehearing *En Banc,* the court adheres to the disposition made of this case by its department opinion. However, inasmuch as there have been two *amici curiae* briefs filed herein since the opinion was written, and because of the importance of the questions involved, we have concluded to add something to the original opinion.

This is a case where the respondent constructed and maintained a dam for the purpose of creating a backwater pond to be used by it in its logging operations; the dam broke and the water so confined flowed over the plaintiff's lands, and this action was brought to recover alleged damages caused thereby. From a verdict and judgment in favor of the defendant, this appeal is taken. For more of the facts involved, reference is made to the former opinion.

Generally speaking, there are two chief questions involved in a case of this character; the first is, whether the dam owner must construct and maintain his dam entirely at his own peril and as an insurer against damage, or whether he will be excused from damages caused by floods which he could not reasonably have

anticipated, and if the latter be the correct doctrine, then the care required of such dam owner to anticipate freshets and flood waters; and secondly, whether, as to all floods and conditions which he is required to anticipate, he must maintain his dam at his peril and as an insurer, or will reasonable care be the measure of his duty. In our former opinion we meant to deal only with the first proposition mentioned. It was not necessary to a decision of the case that we should deal with the second proposition above mentioned, because the trial court had instructed the jury that defendant was bound to maintain his dam so that the same would withstand "not only the usual and ordinary freshets, but must also be sufficient to withstand such extraordinary freshets as an ordinarily prudent person would reasonably expect to occur." In other words, the trial court instructed the jury on the theory that the dam owner would be liable, regardless of the question of care or negligence, for damage resulting from the breaking of his dam as the result of such floods as a reasonably prudent man would be required to anticipate.

This instruction was certainly as favorable to the appellant as he could have asked, because it eliminated from the case the question of the negligence or lack of negligence of the defendant and imposed upon it the duties of an insurer.

We wish to say, however, that in the departmental opinion we did not mean to, nor do we now, either approve or condemn the instruction given by the trial court; we only hold that it was as favorable to the appellant as any view of the law would justify, and therefore he is not in position to complain.

On the first above mentioned question we intended to hold, and we now hold, that the dam builder and owner does not build and maintain the dam at his

absolute peril and is not an insurer, but that, on the contrary, he will be excused by acts of God or floods which he could not have anticipated, and that he would be required to anticipate only such floods as a reasonably prudent man, acquainted with all of the surrounding circumstances, would anticipate.

But it is said that this holding is in accordance with the doctrine of the cases of *Fletcher v. Rylands,* L. R., 1 Exch. 265, and *Defiance Water Co. v. Olinger,* 54 Ohio St. 532, 44 N. E. 238, 32 L. R. A. 736, which cases this court in its first opinion seemed to criticize. We deem it unnecessary at this time to determine what those cases actually hold; it is sufficient to say that, if our holding is in accordance with the view of those cases, then we follow them; otherwise we do not.

HOLCOMB, C. J., MOUNT, MITCHELL, PARKER, TOLMAN, FULLERTON, and MAIN, JJ., concur.