STATE, RESPONDENT, *v.* SEDLACEK, APPELLANT.

(No. 5,738.)

(Submitted September 16, 1925. Decided October 1, 1925.)

[239 Pac. 1002.]

*Intoxicating Liquors — Information — Sufficiency — Immaterial Variance — Witnesses — Detectives — Nonexperts — Instructions—Weighing Evidence.*

Intoxicating Liquors—Information—When Sufficient.
  1.  Under section 11111, Revised Codes of 1921, the information in prosecutions for violations of the liquor law need not allege the kind of liquor manufactured, sold, *etc.*, a general description of the liquor by the designation "intoxicating liquor" being sufficient, whether the liquor in question be alcohol, brandy, whisky, *etc.*, each of which is a beverage, or a liquid such as hair tonics, flavoring extracts, *etc.*, containing one-half of one per centum or more of alcohol by volume which is fit for beverage purposes.

Same — Information Unnecessarily Going into Particulars — State Restricted to Proof Accordingly.
  2.  The rule that where the indictment or information unnecessarily describes the subject matter of the prosecution so minutely

---

1.  Tests of intoxicating character of liquor as affected by statute, see notes in 4 A. L. R. 1137; 11 A. L. R. 1233.
2.  Effect of bill of particulars on proof, see note in 8 A. L. R. 550.

as practically to amount to a bill of particulars, the state is restricted in its proof accordingly, is applicable to a liquor case.

Same—"Moonshine Whisky"—Definition.

3. Moonshine whisky is "whisky" within the meaning of section 11048, Revised Codes, illicitly distilled or produced.

Same—Variance—When Immaterial.

4. Where the information charged defendant with a sale of "certain spirituous liquid containing more than one-half of one per centum of alcohol by volume which was fit for beverage purposes," but the proof showed the sale of moonshine whisky, a liquor different from that described in the information, there was a variance which, however, was not fatal, it appearing that defendant was as fully prepared to meet the proof made by the state as he would have been to meet that of the charge contained in the information.

Same—Nonexpert Witnesses—Evidence—Admissibility.

5. Nonexperts, accustomed to drink liquor and acquainted with the various kinds, may testify as to the character of liquor in question in a prosecution under the liquor law.

Same—Detectives—Compensation Paid—Cross-examination—Evidence—Admissibility.

6. *Quaere:* May a detective employed by the prosecution in a particular case who testifies for the state be required to state on cross-examination the amount of compensation he has received or is to receive for the services rendered by him?

Same—Witnesses—Detectives—What Evidence Admissible.

7. A detective, while on the witness-stand, is merely a witness, and the circumstances of his employment and his connection with the case in which he testifies are material only so far as they tend to reflect upon the question of his bias, prejudice or personal interest.

Same—Detectives—Cross-examination—What Improper.

8. In a prosecution under the liquor law, refusal to permit a special enforcement officer to answer a question on his cross-examination relating to the amount of compensation received by him in a case other than the one on trial was proper.

Evidence—Cross-examination—Discretion.

9. While the right of cross-examination is a substantial one, the extent to which it may be carried rests largely in the sound discretion of the trial court, and its rulings thereon are subject to review only for an abuse of the discretion.

Intoxicating Liquor—Defendant as Witness—Improper Question.

10. Since defendant cannot have his entire life searched in an effort to convict him of the particular offense of which he stands charged, a question asked him by the trial judge whether he had "at any time" sold any liquor to the state's witness was error, but harmless, his answer having been in the negative.

Same—Instructions—Weighing Evidence—Discretion.

11. The propriety of submitting instructions to the jury based upon the rules prescribed by section 10672, Revised Codes, for weighing evidence, is a matter addressed to the trial court, and its determination is subject to review only for abuse of discre-

---

5. See 11 R. C. L. 635.

9. See 28 R. C. L. 609.

tion; ordinarily an instruction in the words of section 10508 is sufficient.

Same—Failure of State to Introduce Certain Witnesses—Cautionary Instruction—Proper Refusal.

12. Refusal of an instruction in a liquor prosecution, in which defendant contended that while there were three witnesses other than the two special enforcement officers upon whose testimony the state relied for a conviction present at the time the alleged offense was committed, they were not called to testify, to the effect that where weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory was within the power of the party to produce, the evidence offered should be viewed with distrust, *held* not error.

Criminal Law, 16 C. J., sec. 1132, p. 586, n. 98; 17 C. J., sec. 3654, p. 308, n. 60.

Indictments and Informations, 31 C. J., sec. 308, p. 751, n. 55; sec. 310, p. 753, n. 96; sec. 424, p. 827, n. 98; sec. 445, p. 837, n. 15.

Intoxicating Liquors, 33 C. J., sec. 438, p. 722, n. 57; sec. 462, p. 736, n. 73; sec. 468, p. 739, n. 25; sec. 499, p. 757, n. 65, 67; sec. 527, p. 775, n. 16; sec. 528, p. 775, n. 34.

Witnesses, 40 Cyc., p. 2512, n. 43; p. 2513, n. 46; p. 2663, n. 51.

*Appeal from District Court, Richland County: Frank P. Leiper, Judge.*

FRED SEDLACEK was convicted of selling and possessing intoxicating liquor, and appeals from the judgment and from an order denying him a new trial. Affirmed.

*Mr. L. V. Ketter* and *Messrs. Arnold & Phillips,* for Appellant, submitted a brief; *Mr. Ketter* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. I. W. Choate,* Assistant Attorney General, submitted a brief; *Mr. Choate* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

By an information in two counts the defendant was charged with the unlawful sale of intoxicating liquor and with the unlawful possession of intoxicating liquor. He was convicted upon both counts, and has appealed from the judgment and from an order denying him a new trial.

**1.** It is the principal contention of counsel for defendant that the trial court adopted an erroneous theory of the case, and various phases of this contention are presented in more than one-half of the assignments of error.

Omitting the introductory allegations, the first count of the information charges that:

"On or about the 28th day of September, 1924, and before 'the filing of this information, the said defendant did willfully, unlawfully, wrongfully, knowingly, and intentionly sell certain intoxicating liquors, to-wit, *certain spirituous liquid containing more than one-half of one per centum of alcohol by volume, which was then and there fit for use for beverage purposes,* to divers and sundry persons, and which said act was then and there prohibited and unlawful, contrary to the form, force, and effect of the statute," *etc.*

The case made by the state rests on the testimony of E. R. Small, a prohibition enforcement officer, and Leslie Hauberg, an agent employed to assist him. The story told by these witnesses is that on Sunday morning, September 28, 1924, they, with a Mr. Bruner, a boy named Riley, and a man whose name was not known to them, drove in Small's car to defendant's home in Richland county; that when they arrived defendant came to the car, and he and Bruner then went into the house; that Bruner returned in a few minutes with a soda-pop bottle filled with liquor; that Small and Hauberg each drank from the bottle and recognized the contents as moonshine whisky; that Small then went to the house, knocked on the door and when the door was opened, asked defendant for a couple of bottles of "moon" or "moonshine"; that defendant stepped into another room of the house and returned immediately with two soda-pop bottles each filled with liquid; that when asked the price defendant replied "$2"; that Small then paid him two silver dollars, took the bottles and returned to his companions, who were not more than forty or fifty feet away, opened one bottle and Small, Hauberg and

Bruner drank about one-half of its contents; that Small and Hauberg left soon after the purchase was made. Small testified that later he smelled and tasted the contents of the other bottle, and that each bottle at the time the purchase was made was filled with moonshine whisky. Hauberg testified that the bottle from which he drank contained intoxicating liquor.

Counsel for defendant insist that, since the state through the [1] county attorney charged a sale of a particular kind of liquor, "to-wit, certain spirituous liquid containing more than one-half of one per centum of alcohol by volume, which was then and there fit for use for beverage purposes," the burden was upon it to prove the charge as made; that evidence that the bottles contained moonshine whisky was irrelevant; and that there is a variance between the pleading and proof which amounts to a failure of proof.

Section 11048, Revised Codes, provides that the word "liquor" or the words "intoxicating liquor" shall include (1) alcohol, brandy, whisky, rum, gin, beer, ale, porter and wine; and (2) in addition thereto, any spirituous, vinous, malt or fermented liquor, liquids and compounds, whether medicated, proprietary, patented or not, and by whatever name called, containing one-half of one per centum or more of alcohol by volume, which are fit for use for beverage purposes. In other words, this section describes all intoxicating liquors and comprises them all in two general classes. The first includes the liquors in more or less common use at the time the Eighteenth Amendment to the federal Constitution was adopted; the second class, created for the purpose of preventing evasions of the law, includes liquors, liquids and compounds (not comprehended by any of the liquors specifically enumerated in the first class),—that is, nostrums, quack medicines, hair tonics, flavoring extracts or other decoctions which contain one-half of one per centum or more of alcohol by volume, and which are fit for use for beverage purposes.

Section 11111 provides that in prosecutions under the laws of this state relating to intoxicating liquors it shall not be necessary to state the kind of liquor manufactured, sold, *etc.*; a general description of the liquor by the designation "intoxicating liquor" is sufficient (*State* v. *Fredericks*, 65 Mont. 25, 212 Pac. 495; *State* v. *Jenkins*, 66 Mont. 359, 213 Pac. 590; *State* v. *Knilans*, 69 Mont. 8, 220 Pac. 91; *Massey* v. *United States* (C. C. A.), 281 Fed. 293); and this is true whether the liquor belongs to the first or the second class mentioned in section 11048. If the liquor belongs to the first class mentioned in that section, the prosecution need go no further than to show that it is alcohol, brandy, whisky, rum, gin, beer, ale, porter or wine, as the case may be, for every liquor of the first class is a beverage,—that is, in contemplation of law it is fit for use for beverage purposes; but if the liquor belongs to the second class, the state must then show that it contains one-half of one per centum or more of alcohol by volume and that it is fit for use for beverage purposes. To summarize: Section 11111 prescribes the rule of pleading in these liquor cases, while section 11048 controls the method of proving the charge made.

It is a general rule that if the charge contained in an [2] indictment or information does not apprise the accused sufficiently to enable him to prepare his defense, he may demand and receive a bill of particulars (2 Bishop's New Criminal Procedure, sec. 643), and that rule is made applicable to procedure in liquor cases by section 11078 (*State* v. *Griebel*, 65 Mont. 390, 211 Pac. 331). If a bill of particulars is furnished, its effect is to restrict the state to proof of the matters thus specifically set forth. (*Rogness* v. *Northern Pac. R. Co.*, 59 Mont. 373, 196 Pac. 989, and note, 8 A. L. R. 550.) It is equally well settled that if the pleading, though unnecessarily, describes the subject matter so minutely as practically to amount to a bill of particulars, the same rule applies, and the pleader is restricted in his proof accordingly.

(*Anderson* v. *Rucker Bros.*, 107 Wash. 595, 8 A. L. R. 544, 183 Pac. 70, 186 Pac. 293.)

We have, then, presented by this record an allegation unnecessarily and inexcusably made more specific than it need be made, charging an unlawful sale of a particular kind of intoxicating liquor designated by the description given as a liquor other than and different from alcohol, brandy, whisky, rum, gin, beer, ale, porter or wine, whereas the evidence discloses a sale of moonshine whisky. In *State* v. *Marchindo,* 65 Mont. 431, 211 Pac. 1093, this court referred to moonshine whisky as whisky of the moonshine kind. In *State* v. *English,* 71 Mont. 343, 229 Pac. 727, we referred to moonshine whisky as intoxicating liquor, and it was so treated in *State* v. *Critzer,* 122 Wash. 88, 209 Pac. 1081, and in *State* v. *Harris,* 106 Or. 211, 211 Pac. 944.

It is notorious that the words "moonshine whisky" describe [3] a well-known article of illicit commerce. The word "whisky" indicates a distilled liquor whose properties and methods of production are so generally known that it is declared to be intoxicating as a matter of law. The word "moonshine" in that connection merely describes the method of production; that is, it characterizes the whisky as illicitly distilled or produced. (Funk & Wagnalls Standard Dictionary.) In other words, "moonshine whisky" is whisky within the meaning of section 11048, even though it may contain fusel oil, and is not aged or proved as was the whisky in commerce at the time the Eighteenth Amendment was adopted. (*United States* v. *Golden* (D. C.), 1 Fed. (2d) 543.)

By proving a sale of moonshine whisky the state proved a sale of whisky within the meaning of the statute, hence a sale of intoxicating liquor, but a liquor different from that described in the information. This presents a variance within the meaning of that term adopted by this court in *State* v. *Crean,* 43 Mont. 47, Ann. Cas. 1912C, 424, 114 Pac. 603.

We are unable to agree with the attorney general that the portion of the first count, which we have italicized for convenient reference, should be treated as surplusage and disregarded. To the extent that the information describes the kind of liquor alleged to have been sold, to that extent it serves the purpose of a bill of particulars and restricts the state in the matter of proof. In *State* v. *Marchindo*, above, the defendant was charged with the unlawful sale of "certain intoxicating liquor known as whisky." It was held that the proof corresponded to the pleading, but there is the intimation that the words, "known as whisky," might have been treated as surplusage. Clearly this last observation was pure *dictum,* and the same *dictum* appears in the opinion in *State* v. *Jenkins,* above, where the question presented was whether the trial court erred in permitting the information to be amended to meet the proof. The *dictum* in each instance is disapproved.

But it does not follow as a necessary consequence that the [4] integrity of the judgment is affected by the variance. The rule at common law that the description of the subject matter of the offense, though unnecessarily minute, must be proved as made, and, if not so proved, the prosecution fails, has been modified materially by our statutes. Section 11870, Revised Codes, provides that in case of a variance between the pleading and proof in respect to the description of any place, person or thing, the trial court may permit the information to be amended to correspond to the proof "if the defendant cannot be thereby prejudiced in his defense on the merits"; and section 11874 declares: "Neither a departure from the form or mode prescribed by this Code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right." Under these statutes the question presented is, not whether there is a variance, but whether the

variance is a material one, and the test prescribed is whether the variance prejudiced or tended to prejudice the defendant in respect to a substantial right. (*Oats* v. *State,* 153 Ind. 436, 55 N. E. 226; *Goldsberry* v. *State,* 66 Neb. 312, 92 N. W. 906; *Mulrooney* v. *State,* 26 Ohio St. 326.)

In his own behalf, defendant, while admitting that Small, Hauberg, Bruner, the boy Riley and the other man were present at his place on Sunday, September 28, 1924, denied every other material statement made by Small or Hauberg. Specifically he denied that he went into his house at any time while Small or Hauberg was present, or that Bruner went into his (defendant's) house, or that Small came to the door or knocked, or that he (defendant) was in the house, or that Small, at the door, asked defendant for something to drink or for "moon" or "moonshine," or that he (defendant) gave Small two bottles of liquor, or that Small paid him any money whatever, or that he sold to Small the two bottles of liquor with reference to which Small testified. In all of these denials he was corroborated by his wife and Herman Hinz, who were in defendant's house during the time Small and Hauberg were there. Defendant testified further that he was out in the yard with the five men during the entire time that Small and Hauberg were at his place, and that while out there Small asked him for something to drink, and that he replied that he did not have anything to give him. He testified further that he never at any time or place sold moonshine whisky to Small and Hauberg or to either of them.

Small and Hauberg each testified that at Sensiba's dancehall, on the evening of September 27, 1924, he purchased a soda-pop bottle filled with moonshine whisky from the defendant, for which he paid one dollar. Defendant denied these statements, denied that he saw Small or Hauberg at the dancehall, and introduced evidence tending to show that he left the dance-hall before Small or Hauberg arrived at that place.

74 Mont.—14

Conceding that error was committed in the first instance in admitting evidence of a sale of moonshine whisky under the allegations of the information, or in failing to have the information amended to correspond to the proof made by the state, in what respect was the defendant prejudiced thereby? If the story told by him and his witnesses is true, his defense to a charge of selling moonshine whisky would have been precisely the same as the defense which he made to the charge as it is contained in the information. If the transactions detailed by Small and Hauberg, and denied specifically by defendant and his witnesses, did not occur, defendant is not guilty. If they did occur, as the jury by their verdict found, then the defendant violated the law by unlawfully selling intoxicating liquor, and, so far as his defense on the merits is concerned, it is inconceivable that he was prejudiced in respect to any substantial right by the misdescription contained in the information.

If the information had been amended to correspond with the proof, as it might have been under section 11870, it is manifest that defendant could not have contended seriously that he was thereby prejudiced in making his defense. In other words, the record discloses that defendant was as fully prepared to meet the proof made by the state as he would have been to meet proof of the charge contained in the information.

The observation made by this court in *State* v. *Griebel,* above, is equally applicable here. It was there said: "The evidence discloses that the defendant was prepared to defend himself and ably at every point; every move of the state seems to have been anticipated by his counsel."

The foregoing discussion is applicable equally to the second count and the proceedings had thereunder.

Upon this branch of the case we conclude that the variance between the pleading and proof is not material under the circumstances disclosed by the record; that proof of the sale of moonshine whisky is sufficient of itself to prove a sale of in-

toxicating liquor; hence it was not necessary for the state to prove the alcoholic content or that the liquor was fit for use for beverage purposes (*State* v. *Miller,* 69 Mont. 1, 220 Pac. 97), and that the evidence offered of analyses made of the liquor was immaterial but harmless.

2. Small and Hauberg each testified that he had used [5] whisky and that he knew the taste, smell and effects of it. The qualifications of these witnesses to testify to the character of the liquor purchased from the defendant is called in question, but the objection is without avail. It is a general rule that even nonexperts, accustomed to drink liquor and acquainted with the various kinds, may testify as to the character of liquor in question. (*Heitler* v. *United States* (C. C. A.), 280 Fed. 703; Blakemore on Prohibition, p. 123; Black on Intoxicating Liquor, sec. 520.) The court did not err in admitting the evidence.

· 3. On cross-examination Small testified that he was a prohi- [6] bition enforcement officer employed generally by the state of Montana, but that at the time he purchased the liquor from defendant he was employed by Richland county; that prior to the trial of this case he had been paid in full by the county for the services rendered by him; that he did not have any agreement for further compensation for the work done upon this case; that he did not expect any further compensation except the ordinary *per diem* and mileage allowed a witness, and that, so far as his compensation was concerned, it did not make any difference to him whether the defendant was convicted or acquitted, but that he did like to accomplish something by his work. He was then asked: "How much did Richland county pay you and Hauberg?" To which he replied: "I can't say." The county attorney then objected, and the objection was sustained. The witness was then asked: "What is your compensation working at similar cases when you are paid by the state of Montana?" An objection to

this question was sustained, and defendant now predicates error upon each ruling.

Whether a detective who has been employed by the prosecution upon a particular case and who testifies for the state upon the trial of that case may be required to state on cross-examination the amount of compensation he has received or is to receive for the services rendered by him, is a question which has been determined in a few instances only, so far as disclosed by our research, and there is some conflict among the few authorities we have found. That the amount of compensation should be permitted to be shown is the rule in Pennsylvania (*Commonwealth* v. *Farrell,* 187 Pa. 408, 41 Atl. 382), in Iowa (*State* v. *Carroll,* 85 Iowa, 1, 51 N. W. 1159), in South Dakota (*State* v. *Mulch,* 17 S. D. 321, 96 N. W. 101), and in New York (*People* v. *Loris,* 131 App. Div. 127, 115 N. Y. Supp. 236); and this rule is approved by Jones (5 Jones' Commentaries on Evidence, p. 146). In *State* v. *Wakely,* 43 Mont. 427, 117 Pac. 95, this court intimated, without deciding, that in a proper case it would adhere to the same rule. Though not directly in point, the following authorities tend to support the rule: *Alford* v. *Vincent,* 53 Mich. 555, 19 N. W. 182; *Southern Ry. Co.* v. *Crowder,* 130 Ala. 256, 30 South. 592; *Kerfoot* v. *City of Chicago,* 195 Ill. 229, 63 N. E. 101.

In *State* v. *Long,* 95 Vt. 485, 115 Atl. 734, the supreme court approved the ruling of the trial court excluding evidence of the amount of the detective's compensation, but the decision is criticised by Wigmore as unsound (2 Wigmore on Evidence, 2d ed., p. 346, note 2). In *White* v. *State,* 121 Ga. 191, 48 S. E. 941, it was held that the trial court did not commit reversible error in excluding evidence of the amount of the detective's compensation.

We deem it unnecessary, indeed improper in this instance, to determine the rule which should be adopted and observed in this state, for neither of the questions propounded to the

witness Small presents the subject. In the first question he was not asked to state the amount of his compensation, and there is nothing in the record to disclose that he knew how much Hauberg received; rather his answer indicates that he did not know.

Our attention has not been called to any authority which **[7, 8]** sustains the defendant's contention that a detective should be required to state the amount of compensation he receives for work done in a case other than the case on trial. In *State* v. *Wakely,* above, this court announced the general rule as follows: "We recognize the duty of trial judges to allow the utmost latitude in cross-examination, especially in cases like this, where the question of the guilt or innocence of a citizen depends entirely upon the credit to be given to witnesses hired to detect violators of the statute," and that language was quoted approvingly in *State* v. *Diedtman,* 58 Mont. 13, 190 Pac. 117. These observations, while made with respect to paid detectives, apply equally to witnesses generally. The law does not classify witnesses according to their occupations. A detective, while on the witness-stand, is merely a witness, and the circumstances of his employment and his connection with the case are material only so far as they tend to reflect upon the question of his bias, prejudice or personal interest. It is inconceivable that the amount which Small had received for work done in other cases, or which he may receive for work to be _done hereafter, could reflect upon the question of his interest in the outcome of the instant case.
**[9]** In any event, while the right of cross-examination is a substantial one, the extent to which it may be carried rests largely in the sound discretion of the trial court, and its rulings thereon are subject to review only for an abuse of the discretion. (*Conway* v. *Monidah Trust,* 51 Mont. 113, 149 Pac. 711; *State* v. *Biggs,* 45 Mont. 400, 123 Pac. 410; 5 Jones' Commentaries on Evidence, sec. 842; 2 Wigmore on Evidence,

2d ed., sec. 944.)    There was no abuse of discretion shown in this instance.

4. While the defendant was on the stand testifying as a witness in his own behalf, the following questions were propounded to him by the presiding judge: "Did you ever at your place sell them, or either of them, any moonshine whisky? Then or at any time?" The context discloses that the reference is to Small and Hauberg. Objection was made to each question, but the objection was overruled, and error is assigned to the rulings. If the witness had answered either question in the affirmative, the trial judge would have been confronted by a very embarrassing situation. That a defendant on trial cannot have his entire life searched in an effort to convict him of the particular offense of which he stands charged is a proposition too well settled to require a citation of authorities. But in this instance the defendant answered each question in the negative, and it appears impossible that he could have suffered prejudice in any substantial right by reason of the fact that the questions were asked him.

[11] 5. Defendant requested the court to instruct the jury: "No. 9. That the evidence is to be estimated not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict, and therefore, if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory was within the power of the party, the evidence offered would be viewed with distrust."

The request was refused and error is assigned. This offered instruction embraces the provisions of subdivisions 6 and 7 of section 10672, Revised Codes. The opening sentences of that section read as follows: "The jury, subject to the control of the court, in the cases specified in this Code, are the judges of the effect or value of evidence addressed to them, except when it is declared to be conclusive. They are,

however, to be instructed by the court on all proper occasions.''
Then follow seven subdivisions, each containing a distinct
rule of law. But it is to be observed that any one of these
rules is, or all of them are, to be given only on proper oc-
casions. In other words, the propriety of submitting any or
all of them in a given case must be determined by the trial
court in the first instance, and its determination is subject
to review only for abuse of discretion. (*McCrimmon* v.
*Murray*, 43 Mont. 457, 117 Pac. 73; *White* v. *Chicago, M. &
P. S. R. Co.*, 49 Mont. 419, 143 Pac. 561.) In the case last
mentioned this court said: ''Ordinarily, a general instruction
embodying the provisions of the statute [Rev. Codes 1907,
sec. 7864, now 10508, Rev. Codes 1921], is sufficient.'' (*State*
v. *Kessler, ante*, p. 166, 239 Pac. 1000.) In this instance the
court gave in substance the provisions of section 10508 in its
instruction No. 16.

Counsel for defendant contend that, since it appears from
[12] the state's case that Bruner, the boy, Riley and the
unknown man were present at the time it is alleged the of-
fense was committed, and no one of these three was called as a
witness by the prosecution, a situation was presented which
rendered it necessary, or at least proper, that the offered in-
struction should have been given. The answers to this argu-
ment are obvious: It does not appear that any one of these
three persons was within the jurisdiction of the court at any
time after the cause was set for trial, or that it was within
the power of the state to produce them or any of them.
Again, so far as we know from this record, each of the three
persons, if called to testify, might have corroborated fully the
story told by Small and Hauberg; and, since the testimony of
these two witnesses was accepted by the jury as true, it
needed no corroboration, and defendant cannot complain that
the case against him was not made stronger if the case as
made is sufficient. And finally, it cannot be said as a matter
of law that it appeared to the trial court, or that it appears

to this court, that the testimony which the three so-called disinterested witnesses might have given would have been stronger and more satisfactory than the testimony given by Small and Hauberg.

5. Finally, it is contended that the evidence is insufficient to sustain the verdict; but if the jury believed the testimony of Small and Hauberg, the commission of the offense was established (Black on Intoxicating Liquors, sec. 520; *Kammann* v. *People*, 26 Ill. App. 48), and that their testimony was accepted as true is evidenced by the verdict.

The assignments not covered specifically do not require consideration.

It cannot be said that the state's case was handled well or that the record is free from errors. We content ourselves with saying that in our judgment the errors are not sufficient to justify a reversal of the judgment. Section 12125, Revised Codes, declares: "After hearing the appeal, the [Supreme] Court must give judgment without regard to technical errors or defects, or to exceptions, which do not affect the substantial rights of the parties."

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.