[No. 21303. Department Two. September 14, 1928.]

EDWIN F. DAVISON *et al., Respondents,* v. SNOHOMISH COUNTY, *Appellant.*[1]

*Charles R. Denney* and *Phil G. Warnock,* for appellant.

*Clarence J. Coleman,* for respondents.

BEALS, J.—Plaintiffs instituted this action against Snohomish county, as defendant, seeking to recover damages alleged to have been suffered by them as the result of the negligence of defendant in the construction and maintenance of the elevated approach to a bridge, known as the "Bascule Bridge," across Ebey slough. In the southwesterly approach to this bridge, there is a right angle turn towards the south, just

[1] Reported in 270 Pac. 422.

easterly of the slough, and at this point the causeway or approach to the bridge is at quite an elevation above the ground level. The bridge itself is approximately eighteen feet wide; the approach, leading to the bridge proper, at the curve just to the east of the bridge, increases in width to a maximum of 30.9 feet, narrowing again to eighteen feet at the end of the turn.

At about eight o'clock in the evening of November 11, 1926, plaintiffs were driving their Ford automobile toward the city of Snohomish and proceeded to cross the bridge from west to east at a low rate of speed. Plaintiff Edwin F. Davison was driving, and as the car rounded the curve to the east of the slough, he lost control, the car skidded, struck the railing on the east, or outer, edge of the approach just around the curve, broke through the railing and, with plaintiffs, fell to the ground. Both plaintiffs suffered severe and painful injuries, and the automobile was wrecked; for all of which damage plaintiffs prayed for judgment in a large amount.

Defendant answered plaintiffs' complaint, denying all the allegations of negligence on its part, and affirmatively pleading contributory negligence on the part of plaintiffs. The action came on regularly for trial, and resulted in a verdict in plaintiffs' favor in the sum of twenty-five hundred dollars. Defendant seasonably moved for judgment in its favor notwithstanding the verdict, or, in the alternative, for a new trial. Both of these motions were denied by the trial court, which thereupon entered judgment upon the verdict, from which judgment defendant appeals.

There is no dispute as to the reasonableness of the amount of the verdict, if appellant is liable at all, the sole question raised being the liability of the county for any damages whatsoever.

Respondents allege that appellant was negligent in

the construction and maintenance of the approach to the bridge, in that, at the time of the accident, the railing through which respondents' car broke was insufficient to act as a guard, that the posts which supported the same were decayed, that the floor or deck of the approach was so constructed as to slope out and down from the center of the curve to the outer edge, and that appellant, prior to the accident, had been repairing a road near the west approach of the bridge and in doing this work hauled over the bridge from the east a considerable quantity of dirt, a portion of which was scattered on and over the approach; that, on November 11, 1926, considerable rain fell, and that as a result the deck of the approach, being covered with wet dirt, became very slippery and, coupled with the other conditions alleged, constituted a menace to motor vehicle traffic.

Respondents urge that the combined effect of the different matters of which they complain produced a dangerous situation, and that the suffering of such a condition to exist constituted negligence on the part of appellant and renders appellant liable for the damages suffered by respondents.

Appellant contends that respondents failed to prove negligence on the part of appellant, and that its motion for judgment notwithstanding the verdict should have been granted. Appellant also assigns other errors; but, in view of our opinion upon the question of appellant's alleged negligence, the other matters assigned as error need not be discussed.

It is undoubtedly the law that it is the duty of a municipality to keep its bridges in a reasonably safe condition for travel. *Zolawenski v. Aberdeen,* 72 Wash. 95, 129 Pac. 1090. On the other hand, a municipality is not an insurer of the safety of every one who uses its thoroughfares; nor is it required to

keep the same in such a condition that accidents cannot possibly happen upon them. As was stated by this court in *Grass v. Seattle,* 100 Wash. 542, 171 Pac. 533, discussing an accident to a pedestrian which it was claimed was caused by a drop in a sidewalk ranging from two and one-half inches at one side of the walk to nothing at the other side:

"Manifestly, it seems to us, a city cannot be held negligent for suffering to remain in a sidewalk a defect so inconsequential as this one was shown to be. A city is not an insurer of the personal safety of every one who uses its public walks. It owes no duty to keep them in such repair that accidents cannot possibly happen upon them. Its duty in this respect is done when it keeps them reasonably safe for use—safe for those who use them in the exercise of ordinary care—and we cannot but conclude that this one was thus reasonably safe."

Respondents admitted that they were thoroughly familiar with the bridge and its approaches, having driven over the same many times prior to the day of the accident, and they consequently were fully advised as to the existence and location of the curve in the approach, the width of the bridge and the approaches and the different grades therein.

As respondents rely upon three several elements, each of which they claim resulted from the negligence of appellant, all three uniting to render the bridge unsafe and to cause the accident which is the basis of this action, it is necessary to analyze these elements of alleged negligence: first, the insufficiency of the railing or guard to prevent respondents' automobile from skidding off the approach; second, the fact that the deck of the approach, at the curve, sloped downward toward the outer edge, which had a tendency to cause the automobile to slide in that direction; and, third, the fact that dirt was scattered over the deck

of the approach, which, being wet by the rain, caused the deck to be more slippery than it would have been had no dirt been scattered over it.

The use of the automobile as a means of transportation of passengers and freight has, during recent years, caused certain changes in the law governing the liability of municipalities in respect to the protection of their roads by railings or guards. A few years ago, when people traveled either on foot or by horse-drawn vehicles, a guard rail could, to a considerable extent, actually prevent pedestrians or animals drawing vehicles from accidentally leaving the roadbed; but, as a practical proposition, municipalities cannot be required to protect long stretches of roadway with railings or guards capable of preventing an automobile, moving at a rapid rate, from leaving the road if the car be in any way deflected from the roadway proper and propelled against the railing. As was said by this court in the case of *Leber v. King County*, 69 Wash. 134, 124 Pac. 397, 42 L. R. A. (N. S.) 267:

"Roads must be built and traveled, and to hold that the public cannot open their highways until they are prepared to fence their roads with barriers strong enough to hold a team and wagon when coming in violent contact with them, the condition being the ordinary condition of the country, would be to put a burden upon the public that it could not bear. It would prohibit the building of new roads and tend to the financial ruin of the counties undertaking to maintain the old ones."

This principle applies with special force to elevated causeways constructed of wood, such as the approach from which respondents' automobile fell, as upon such a structure the railing can be anchored or secured only to the deck of the causeway. Upon the ground, in situations of special danger, strength can be given to a guard or railing by driving posts into the earth and

a guard of any desired strength can be constructed in that manner; a concrete viaduct can be constructed with side walls of considerable resisting power; but the same degree of protection cannot be expected from a guard or railing along the side of an elevated frame causeway or viaduct. Respondents introduced some testimony to the effect that the posts which supported the railing were, to some extent, rotted. We have carefully considered this testimony, and for the purposes of this opinion assume that it was true; but we still do not think that it was sufficient to take the case to the jury upon the question of appellant's negligence in connection with the condition of the railing at the time of the accident.

In regard to the second element of alleged negligence urged by respondents, the fact that at the curve in the approach the deck sloped slightly downward towards its outer edge, we are of the opinion that, in view of the fact that the slope was so slight as not to be noticeable to the eye, amounting to no more than a small fraction over an inch to eighteen feet horizontal measurement across the deck, or from two and three-quarters inches to one and one-eighth inches to the entire width of the deck, it is our opinion that the maintenance of the approach in this condition did not constitute such negligence on the part of appellant as would render appellant liable to respondents in this action. The supreme court of Michigan in the case of *Perkins v. Delaware Township,* 113 Mich. 377, 71 N. W. 643, held, as matter of law, that the maintenance of a bridge, sixteen feet wide, which had no railings at all, one inch lower on one side than the other, was not negligence on the part of the township. While the facts of the Michigan case differ considerably from the situation now before us, the opinion is

of value in aiding us in the determination of the case at bar.

Referring to the third element of negligence relied upon by respondents, the fact that some dirt was scattered over the deck of the approach, and that, due to the fact that considerable rain had fallen and was still falling at the time of the accident, the wet dirt caused the deck to be unusually slippery, we are unable to find any testimony in the record which would justify the submission of this element of alleged negligence to the jury. Appellant would not be liable because of any ordinary accumulation of dirt or similar matter upon the approach, unless a dangerous condition were permitted to exist for such a period of time as would imply, in law, notice to appellant of the fact that its roadway was unsafe, and it should further appear that appellant had been negligent in not remedying the condition within a reasonable time. Respondents contend in this case that the dirt upon the roadway had been scattered by appellant's employees within a very short time prior to the accident. Giving the testimony upon this point the construction most favorable to respondents' contention, we feel compelled to hold that, as matter of law, there was no testimony sufficient to go to the jury upon this alleged element of appellant's negligence.

In the case of *Swain v. Spokane,* 94 Wash. 616, 162 Pac. 991, 8 L. R. A. 1916D 754, we held that a municipality could not be held liable as an insurer of the tractability of every automobile driven on its streets. In that case, Chief Justice Ellis, speaking for the court, states that it appeared from the face of plaintiffs' complaint that, for all ordinary uses of the street, the same was in a safe condition, and that the municipality could not be held liable for injuries occasioned by the "eccentricities of an unmanageable auto-

mobile," which constituted a contingency not reasonably to be anticipated. The cases of *Leber v. King County*, and *Swain v. Spokane, supra*, were by this court quoted with approval in the case of *Culley v. King County*, 101 Wash. 38, 171 Pac. 1034, in which it was held that the duty to protect a highway "must necessarily depend upon the circumstances of the particular case."

Measured by this standard, we are of the opinion that it must be held, as matter of law, that there is no testimony in this record which shows negligence for which appellant is liable to respondents. This court has repudiated "the scintilla of evidence" doctrine, and has held that evidence sufficient to support a verdict must be substantial; *Ziomko v. Puget Sound Elec. R.*, 112 Wash. 426, 192 Pac. 1009, and *Adams v. Anderson & Middleton Lum. Co.*, 124 Wash. 356, 214 Pac. 835; and in our opinion this repudiated doctrine would have to be given a liberal construction to permit the verdict rendered in this case to stand.

Respondents rely upon the case of *Beach v. Seattle*, 85 Wash. 379, 148 Pac. 39, in which this court upheld a verdict against the municipality, based upon its negligence in leaving unguarded, poorly lighted and without danger signals, a blind street end at the edge of a gulch. Examination of the opinion in this case indicates that the decision was based largely upon the failure of the city to place a red light or other danger signal at the street end, or to place lights in the vicinity which would disclose the dangerous situation. The city had also neglected to construct any barrier whatsoever which might serve as a visible warning of danger as well as an obstruction. The physical facts which resulted in injury to the plaintiff in this action constituted almost an invitation to the driver of an automobile to continue along the street which was

broken by the deep gulch, there being nothing to suggest danger.

Respondents cite several cases from other jurisdictions which, while based upon different facts, contain statements which support some of the propositions urged by their counsel. On such a question as this, authorities can be found which, in part at least, seem to support almost any proposition which can seriously be urged. We believe, however, that the opinions of this court are decisive of the issues raised on this appeal.

The judgment is reversed with directions to dismiss the action.

FULLERTON, C. J., MAIN, ASKREN, and HOLCOMB, JJ., concur.