Joe B. McCORMICK and Isabel McCormick,
husband and wife, Walter E. Davis and
Helen Davis, husband and wife, Paul A.
Custer and Lucile M. Custer, husband and
wife, Appellants (Plaintiffs below),

v.

TOWN OF THERMOPOLIS, a municipal
corporation, Appellee (Defend-
ant below),

and

Chicago, Burlington & Quincy Railroad Com-
pany (Defendant below).

No. 3854.

Supreme Court of Wyoming.

Dec. 28, 1970.

Raymond B. Whitaker and James R. Mc-
Carty, Casper, for appellants.

Louis L. Walrath, Thermopolis, William
S. Bon, Casper, for appellee.

Before GRAY, C. J., and McINTYRE,
PARKER, and McEWAN, JJ.

Mr. Justice PARKER delivered the opin-
ion of the court.

The McCormicks, owners of real estate,
sued the Chicago, Burlington & Quincy
Railroad Company and the Town of Ther-
mopolis, alleging that defendants carelessly
and negligently maintained a nuisance and
an unsafe sewer and drain, which caused
water to back up and damage plaintiffs'
property on June 14 and 15, 1963, and on
July 28, 1965, and that defendants were
aware of the defectively maintained sewer
and drainage system and prior to June 14,
1963, were on notice the same would likely
cause damage.

The Davises and Custers separately filed
actions which were similar except that they
alleged damage to have occurred only in
1963.

The defendants entered general denials
and asserted that the complaints failed to

state claims on which relief could be granted and pleaded affirmative defenses of extraordinary flood, lack of proximate cause, and contributory negligence. The actions were consolidated for trial by jury. According to the pretrial order, upon the town's request that the plaintiffs "specify with particularity their action of negligence upon which they rely for relief", they asserted "the defendants or either of them are guilty of negligently maintaining the culvert in question, or, in the alternative, negligently failing to maintain the culvert in question, and additionally specify that defendants or either of them wilfully allowed a known nuisance to exist."

At the close of plaintiffs' case in chief both defendants moved for a directed verdict against the plaintiffs and after argument the court directed a verdict in favor of the railroad as to all plaintiffs and a verdict in favor of the town as against the McCormicks. The town then proceeded with its defenses as to the other plaintiffs; and at the conclusion of the testimony the town again moved for directed verdict, which motion was granted, the court entering judgment against the remaining plaintiffs, who together with the McCormicks, have brought this appeal.[1]

Counsel for plaintiffs have failed to supply in compliance with Supreme Court Rule 12(c) (4) either a succinct statement of their argument or the points on which they rely for reversal, but it appears that their dependence is on two points: one, that the evidence and inferences to be drawn therefrom were such as would cause reasonable and fair-minded persons to form different conclusions as to the facts in issue so that the motions for directed verdict should have been denied, and second, the evidence showed that the town had been guilty of negligence in the maintenance of its drainage system—under existing legal decisions in this State the town being liable for damage caused by such negligence.

There does not appear to be any substantial conflict in the evidence; plaintiffs merely insist that different opinions, conclusions, and inferences could be drawn from facts adduced and accordingly the question of negligence was for the jury.

Briefly the situation was that in 1962 and again in June 1963 an extraordinary rainfall occurred at Thermopolis. On both occasions this resulted in the overflow of Candy Jack Draw, a large natural drainage ditch. From 1936 to 1962 no problems of such overflow had been encountered, the only testimony as to previous flooding in the town relating to the year 1922. In both 1962 and 1963 some of the overflow collected at a point where the elevated right-of-way of the Chicago, Burlington & Quincy Railroad intersected Warren Street. The McCormicks' property was located immediately east of the railroad embankment and was unaffected by the 1962 flooding. The Davises and Custers' properties, west of the embankment, were not damaged in 1962 except that the Davises' garage had some water in it; but other property nearby was injured, and the Thermopolis officials had knowledge of this. Subsequently, Davis spoke with town personnel about opening up a culvert that ran underneath the railroad embankment in the vicinity of his property. At one time water coming through this culvert could have gone into a ditch and run to the Big Horn River. A builder had requested that the ditch be filled at his construction sites, and permission had been granted in 1960 after the mayor had examined the ditch, discussed the matter with both the town's street superintendent and engineer, and concluded that since the installation of a storm system in 1954 to the west of the embankment the ditch was no longer needed. After the 1962 trouble the mayor was concerned about flooding but since that condition was something to be anticipated only once in twenty-five years did not consider there was any need for rushing.

1. No argument is presented in the appeal against the judgment insofar as it related to the railroad company.

Various federal agencies were contacted, a survey taken, and by the time of the trial the town's efforts had culminated in a flood control project at an estimated cost of $600,000. However, previous to the 1963 flooding the only physical action taken in the immediate vicinity of the Davises and Custers was an approximately eight-inch elevation of the alley in back of their properties. When the flooding occurred again in 1963, the water which collected to the west of the railroad embankment damaged the properties of the Davises and Custers. In an effort to get rid of some of the water, the county sheriff ordered the opening of the culvert under the embankment, and the water that rushed through damaged the McCormicks' property.

Specifically counsel now argue that the jury could have found with regard to plaintiffs McCormicks the town was negligent in (1) allowing the culvert under the railroad right-of-way to become plugged and thus allowing water to accumulate to the western side of the right-of-way; (2) allowing the ditch from the railroad right-of-way to the river to become plugged; (3) "not providing culverts of sufficient capacity underneath the roads in the natural drainage area, called Candy Jack Draw, since this caused water to drain towards the culvert which would not have done so if the culverts had been adequate." We do not agree that any of the averred grounds would support a verdict in their favor.

■ Plaintiffs did not plead negligence in plan of construction and there is no evidence tending in that direction. In any event we said in Quest v. Town of Upton, 36 Wyo. 1, 252 P. 506, 508, and made clearer in Savage v. Town of Lander, 77 Wyo. 157, 309 P.2d 152, 156, a municipality is not liable for injuries resulting from a negligent plan of construction un-less the court can say the plan is so manifestly dangerous that it is negligent as a matter of law. Additionally, it is uncontroverted that the rainfall and subsequent flooding in 1962 and 1963 were extraordinary,[2] and we have heretofore adopted the well settled rule that a municipal corporation is not liable for damages caused by an overflow of its sewers occasioned by extraordinary rains or floods. Jacoby v. Town of City of Gillette, 62 Wyo. 487, 174 P.2d 505, 513, 169 A.L.R. 502 (rehearing denied 62 Wyo. 514, 177 P. 2d 204); 18 McQuillin, Municipal Corporations, § 53.124 (3 ed.rev.).

Although plaintiffs claim on the basis of Lore v. Town of Douglas, Wyo., 355 P.2d 367, that a municipality is liable for negligence in the maintenance of its sewer system and that this should apply equally to drains, nothing is offered as a basis for a holding that maintenance was here involved; and we are forced to conclude from the record that it was not.

■ We note the plaintiffs' argument of the court's impropriety in directing a verdict against the McCormicks on the apparent basis that flooding would not have occurred but for the sheriff's act in opening the culvert,[3] whereas the mayor had stated the water itself would have forced the culvert open. From this plaintiffs conclude that the sheriff merely accelerated what would have happened had he not acted at all. Our attention is not specifically directed to such testimony, and the only reference on the subject we find in the record is Custer's account of calling the mayor on the first day of the 1963 flood about the opening of the culvert and being told "it will gradually seep open." Such testimony does not support plaintiff's contention.

■ Finally plaintiffs maintain that since the town failed to take remedial action following the 1962 flood, even though

2. An examination of the record does not reveal testimony concerning the McCormicks' complaint of damage occurring in 1965.

3. There was no evidence to show the sheriff was acting for the town.

officials were requested to do so, the jury could have found it to have acted negligently. Such position has no merit. The evidence viewed most favorably to plaintiffs and given every reasonable and legitimate inference established that following the 1962 flood the town immediately took steps to work out an overall drainage system which would prevent flooding even under extraordinary situations; the fact that a year following the 1962 flood did not find the town with such a system was not a basis for holding it negligent.

An examination of the entire record in light of the contentions made by the plaintiffs discloses no evidence which would have warranted the trial court in submitting the cause to the jury.

Affirmed.