[No. 63498-0.　En Banc.]

Argued May 31, 1996.　　Decided December 5, 1996.

NELS BODIN, ET AL., *Petitioners*, v. THE CITY OF STANWOOD, *Respondent*.

*Law Office of Anderson Hunter*, by *Julian C. Dewell*, for petitioners.

*Williams, Kastner & Gibbs*, by *Margaret A. Sundberg*; and *Smith & Hansen*, by *Joel E. Smith*, for respondent.

*Gary N. Bloom, Debra L. Stephens*, and *Bryan P. Harnetiaux* on behalf of Washington State Trial Lawyers Association, amicus curiae.

MADSEN, J. — In November 1990, flood waters twice overflowed the Stillaguamish River and overtopped dikes surrounding the City of Stanwood's sewage treatment lagoon, resulting in floodwaters and sewage flowing out of the lagoon and onto adjacent property owned or rented by plaintiffs. Plaintiffs sued the City, asserting a number of claims, including claims that the City negligently allowed the lagoon to overflow, and negligently designed, constructed, and maintained the sewage plant, pump station, and sewage treatment lagoon. At issue is whether the trial court erred in allowing the City to introduce evidence of its efforts to obtain federal and state grant funds to improve the sewage lagoon as part of an overall flood control plan. The City used the evidence in an attempt to show that it acted reasonably and was not negligent by failing to raise the level of the dikes surrounding the lagoon at an earlier time, when, plaintiffs argue, the City had sufficient funds to do so. We affirm the Court of Appeals' holding that the trial court did not abuse its discretion by admitting the evidence.

Since 1962, the City has operated a 40-acre sewage treatment facility and oxidation lagoon on a floodplain near the Stillaguamish River. Sewage pumped from the City is treated and then discharged into the river. Lagoon dikes surround the facility. The parties dispute the height of the lagoon dikes, with plaintiffs' claiming the dikes are as low as $6^1/2$ feet in some places and the City maintaining the dikes are $9^1/2$-$10^1/2$ feet. The parties also dispute the height of a 100-year flood, with plaintiffs claiming the 100-year flood level is 11-12 feet and the City maintaining the level is $9^1/2$ feet. Plaintiffs properties are on a peninsula surrounded by a horseshoe-shaped section of the Stillaguamish River, and are adjacent to the land where the sewage treatment facility is located.

Periodic flooding has occurred in the City and surrounding area as a result of high tides and high Stillaguamish river flows. The City knew that high floods could result in flooding of the lagoon. In the late 1970's an engineering

firm recommended that the City raise the dikes surrounding the lagoon to 12 feet because floodwaters had nearly breached the dikes during floods. In 1982, a private engineer providing engineering services to the City estimated that the dikes could be raised at a cost of about $50,000.00. An application was submitted to the Department of Ecology for funding, which turned down the application. During the early and mid-1980's, the City considered plans for flood control. Following a flood in 1986, engineers prepared a report recommending that during a five-year period ending in 1992 the City raise the level of the dikes and make other improvements to handle floodwaters, including building a dam across a nearby slough and placing floodgates on the Stillaguamish River. In 1987, an application for a federal Housing and Urban Development (HUD) block grant was submitted in connection with a proposed flood improvement control plan, which included raising the lagoon dikes. HUD agreed to provide funds beginning in 1989. Prior to, and following this agreement, permitting, land acquisition, and design were undertaken by the City and its engineer.

In November of 1990, before the lagoon dikes were raised, heavy rains and warm temperatures caused severe flooding along rivers throughout western Washington, including the Stillaguamish. Twice, floodwater flowed over the top of the lagoon dikes into the lagoon, and then out, spilling sewer effluent and floodwaters across plaintiffs' properties. The November 10, 1990, flood peaked at 10.51 feet, and the November 24, 1990, flood peaked at 10.63 feet. Early in 1991 the City raised the height of the dikes to 12 feet.

Plaintiffs sued the City of Stanwood, alleging their properties were damaged as a result of the floods. They claimed the City was negligent in designing, constructing, and maintaining the sewage treatment lagoon and facility, and also asserted nuisance and inverse condemnation claims. The City moved for summary judgment on several grounds. The trial court granted the City's motion on the

inverse condemnation claim, a claim of negligence in fighting the floods, and a claim of negligence in design, construction, and maintenance of the adjacent slough. Later, the City moved for summary judgment on the remaining negligence and nuisance claims, asserting the defense of discretionary immunity and that the public duty doctrine barred plaintiffs' action. This motion was denied.

Plaintiffs then moved in limine to preclude the City from presenting evidence that it had insufficient funds to make repairs or changes in the dikes to prevent floodwaters from overtopping the dikes. The City's counsel argued that evidence of efforts to obtain grant funds and the lengthy process involved was relevant to the reasonableness of the City's response to the perceived need to raise the dikes. She explained that the City did not intend to claim that it lacked funds to raise the dikes. The trial court denied the motion, stating that the question of reasonable efforts was for the jury. Later, the court reaffirmed this ruling, but stated that if the City presented evidence of its efforts to obtain grant funds, plaintiffs would be permitted to show that the City had sufficient funds of its own to raise the dikes. At trial, the City presented evidence of its efforts to obtain grant funds, and the process involved in the HUD funding. Plaintiffs presented uncontroverted evidence that the City had sufficient funds to raise the level of the dikes before the HUD grant application process, and well before the 1990 floods.

The jury was instructed on the City's duty, in connection with the sewer lagoon and treatment facility, to adjacent property holders. Plaintiffs proposed additional instructions on the City's duty, which the trial court refused to give. The trial court also refused to give plaintiffs' proposed instructions directing the jury that it could not consider the evidence of the City's efforts to obtain grant funds.

The jury returned a verdict in favor of the City on the negligence and nuisance claims. The trial court denied

plaintiffs' motion for a judgment notwithstanding the verdict or a new trial. With regard to the evidence of the City's grant application process, the court reasoned that

> [t]his evidence is relevant to the cost-benefit analysis that a municipality goes through in reacting to concerns about the height of the dikes . . . as well as the timing of raising the dikes. . . . It was a question for the jury whether the dikes were properly designed to begin with and also whether the timing of the decision to raise the dikes was reasonable . . . .

Clerk's Papers (CP) at 10.

Plaintiffs appealed directly to this court, which transferred the appeal to the Court of Appeals. That court affirmed in a partially published opinion. *Bodin v. City of Stanwood*, 79 Wn. App. 313, 901 P.2d 1065 (1995), *review granted*, 128 Wn.2d 1025 (1996). Plaintiffs then sought discretionary review by this court, which was granted.

## ANALYSIS

Initially, we note that while the City cross-appealed the issues of discretionary immunity and the public duty doctrine, it asks that these issues be addressed only if this court holds that the evidence of attempts to procure grant funds is inadmissible. Because we hold the evidence admissible on the question of negligence, we do not decide whether the City would be otherwise entitled to discretionary immunity or whether this action would be barred under the public duty doctrine.

RCW 4.92.090 provides that tort immunity of cities and towns is abolished whether they are acting in a governmental or proprietary capacity, and that cities and towns will be liable "to the same extent as if they were a private person or corporation."[1] Plaintiffs asserted that the City of

---

[1]Cases preceding enactment of the statute are nonetheless relevant, because prior to the abolishment of state tort immunity by RCW 4.92.090 and the enactment of RCW 4.96.010, cities and towns were liable in tort if the tortious act was in the city's or town's proprietary capacity. *See generally* 15 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: *Trial Practice Civil* § 673, at 430-31 (4th ed. 1986).

Stanwood was negligent in the construction, design, and maintenance of the sewer lagoon, tide gate and pump station. They argue that the City negligently failed to raise the level of the lagoon dikes after it had knowledge that the lagoon presented an unreasonable danger to adjacent property owners. The jury was instructed on the City's duty as follows:

> The defendant has a duty to exercise ordinary care in connection with the construction, design, maintenance and repair of its sewer lagoon and tide gate and pump station and to keep, construct, and maintain them in a manner and condition that is reasonably safe for adjacent property owners.

CP at 924 (jury instruction 16). This instruction is virtually the same as an instruction proposed by plaintiffs. CP at 181.

Plaintiffs have assigned error to the trial court's refusal to give additional proposed jury instructions on the City's duty, but have not challenged the giving of instruction 16. " 'The number and specific language of the instructions are matters left to the trial court's discretion.' " *Leeper v. Department of Labor & Indus.*, 123 Wn.2d 803, 809, 872 P.2d 507 (1994) (quoting *Douglas v. Freeman*, 117 Wn.2d 242, 256-57, 814 P.2d 1160 (1991)). Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law. *Leeper*, 123 Wn.2d at 809; *Gammon v. Clark Equip. Co.*, 104 Wn.2d 613, 617, 707 P.2d 685 (1985). When these conditions are met, it is not error to refuse to give detailed augmenting instructions, nor to refuse to give cumulative, collateral or repetitious instructions. *Havens v. C & D Plastics, Inc.*, 124 Wn.2d 158, 165-66, 876 P.2d 435 (1994) (citing *State v. Benn*, 120 Wn.2d 631, 655, 845 P.2d 289, *cert. denied*, 510 U.S. 944 (1993)). Under these principles, the trial court did not err in refusing to give, in addition to instruction 16, two of plaintiffs' proposed instructions,

CP at 179-180, which were detailed elaborations of the City's duty, but repetitious of the instruction given.

The trial court also correctly rejected plaintiffs' proposed instruction that the City was liable for its tortious conduct to the same extent as if it were a private person and that a lack of funds or the City's desire to use federal, state or county funds is not a defense to the failure to raise the lagoon dikes. CP at 179. As this opinion will explain, the City did not assert a "defense" based upon lack of funds or the desire to use grant money. Instead, its attempts to obtain grant funds constitute admissible evidence on whether the City acted reasonably under the circumstances. The proposed instruction was therefore misleading and, under the circumstances of this case, a misstatement of the law. Other instructions correctly stated the law with regard to the City's liability for its negligence, if any.

Plaintiffs' chief complaint is that the trial court erred in ruling that evidence of the City's efforts to procure grant funds to raise the level of the dikes surrounding the sewage lagoon was admissible. The City claims that the evidence was admissible on the question whether the City complied with its duty to use reasonable care. Admission of evidence is within the trial court's discretion. *PUD No. 1 of Klickitat County v. International Ins. Co.*, 124 Wn.2d 789, 813, 881 P.2d 1020 (1994).

For conduct to be negligent, it must be unreasonable in light of a recognizable danger. W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS § 31, at 170 (5th ed. 1984). The "ordinary" or "reasonable" care which a municipality must exercise is "that care which an ordinarily reasonable person would exercise under the same or similar circumstances." *Berglund v. Spokane County*, 4 Wn.2d 309, 315, 103 P.2d 355 (1940). In assessing the standard of reasonable care, a risk-benefit analysis is usually part of the determination. The analysis involves balancing the risk of harm, "in the light of the social value of the interest threatened, and the probability and extent of the harm,

against the value of the interest which the actor is seeking to protect, and the expedience of the course pursued." KEETON ET AL. § 31, at 173. Among other things, consideration must be given to alternative courses open to the actor. *Id.* at 172. Further, "[w]hile mere inconvenience or cost are often insufficient in themselves to justify proceeding in the face of danger, they will justify taking some risks which are not too extreme." *Id.* (footnotes omitted).

Thus, as in the case of a private defendant charged with negligence, the determination whether a municipality has exercised reasonable care "must in each case necessarily depend upon the surrounding circumstances." *Berglund,* 4 Wn.2d at 316. In *Berglund,* the court observed that factors relevant to the determination whether the county there complied with its duty to use reasonable care in keeping its public ways in a reasonably safe condition included "[t]he financial burden, technical considerations, and other factual considerations . . . ." *Id.* at 319.

Plaintiffs urge that allowing the City to submit evidence of the efforts to obtain grant money amounted to allowing the City to present a so-called "poverty" or "hardship" defense, rather than evidence on the reasonableness of the City's conduct. However, the City did not claim that it lacked funds to raise the level of the dikes, and indeed evidence was presented to the jury that the City had sufficient funds in its sewer construction account to raise the level of the dikes well before the 1990 floods. In denying the plaintiffs' motion for a new trial, the trial court recognized the distinction between a poverty defense and evidence going to the reasonableness of the City's conduct, stating that

> there was no allowing in this case of the City to argue — and the City did not argue — that it didn't have the money to undertake these improvements. In fact, I think there is undisputed testimony that the money was there to do the improvements, but that the City did not perceive the risk to be such that they needed to act any more promptly than they did.

Verbatim Report of Proceedings (RP) at 28 (Aug. 25, 1993). Factually, there is no merit to plaintiffs' claim that a "poverty" defense was allowed.

Plaintiffs also maintain that the City was allowed to use the evidence to "excuse" its inaction and to "exonerate" itself of negligence. These claims also misapprehend the purpose for which the evidence was admitted and the principles by which negligence is determined. Plaintiffs maintained that by failing to raise the lagoon dikes, the City was negligent. The City then sought to show that rather than the inaction plaintiffs claimed, the City was in fact taking steps to improve the lagoon dikes as part of overall flood control measures while at the same time relying upon floodfighting efforts, including sandbagging and controlled breaches of dikes to direct floodwaters, efforts which had been effective in prior floods. The evidence of the engineering studies and designs, planning, grant applications, compliance with grant conditions, permitting and land acquisition was evidence of the City's response to the perceived danger, as was the evidence of its floodfighting efforts which had previously been successful. Although there was evidence of seepage into the lagoon during flooding before November 1990, the 1990 floods were the first to overtop the lagoon dikes.

Notably, the City's response to the risk cannot be assessed independently of the risk itself. The *probability* and extent of the harm must be considered in the balance. Disputed evidence was presented both as to the height of a 100-year flood, and the height of the lagoon dikes, with the City presenting evidence that the dikes were sufficient to withstand 100-year floods, and evidence that the November 1990 floods exceeded 100-year flood levels and were nearly unprecedented in terms of the cubic feet per second of water which flooded the lagoon and surrounding area in a very short time.

Whether one charged with negligence has exercised reasonable care is ordinarily a question of fact for the trier of fact. *Gordon v. Deer Park Sch. Dist. No. 414*, 71 Wn.2d

119, 122, 426 P.2d 824 (1967). The question for the jury was what a reasonable person would do " 'under the same or similar circumstances.' " KEETON ET AL. § 32, at 175 (quoting RESTATEMENT (SECOND) OF TORTS § 283). The reasonable person standard "must make proper allowance for the risk apparent to the actor . . . ." *Id.* at 174. As noted, the alternative courses of action available and the expedience of the course chosen must be considered. Contrary to plaintiffs' claim that the City did nothing during the time between the time it allegedly had notice of a dangerous condition and the November 1990 floods, the City embarked upon one of at least three alternative courses open to it, i.e., inaction, immediately raising the level of the dikes, and the course it chose, protecting against harm by its floodfighting efforts, including sandbagging, while conducting studies and looking to a long term solution involving an overall flood control program funded at least in part through grant money, with raising of the lagoon dikes being a component of that program. Given the conflicting evidence on the questions of what constituted a 100-year flood and the height of the dikes, the degree of risk posed by the lagoon could be perceived by the jury as great or not, depending upon the evidence the jury believed. It was, however, for the jury to decide whether the City's assessment of the risk and its decision, in light of that risk, to delay raising the dike and rely upon its floodfighting efforts in the interim was reasonable. Without the evidence of attempts to obtain grant money and the lengthy process entailed, the City could not adequately explain how it was responding to the risk of harm, and the reasonableness of its selection among various alternative courses of action could not be adequately assessed.

In *McCormick v. Town of Thermopolis*, 478 P.2d 67 (Wyo. 1970), plaintiffs asserted that the town was on notice as a result of a 1962 flood that a defectively maintained sewer and drainage system could cause damage to their property during floods. Plaintiffs alleged such damages to their property following floods in 1963 and 1965. The court held

"as a matter of law" that the town was not negligent. *Id.* at 69. Viewed most favorably to plaintiffs, the evidence showed that following the 1962 flood the town sought to work out a total drainage system. Various federal agencies were contacted and a survey was taken; the efforts culminated by the time of trial in a flood control project costing $600,000. *Id.* at 68-70. The court said that the fact that a year following the 1962 flood did not find the town with such a system was not a basis to hold it negligent. Here, unlike the situation in *McCormick*, the evidence is not sufficient to hold that as a matter of law the City was not negligent. However, as in *McCormick*, the evidence of the municipality's efforts to meet a perceived risk, including interaction with federal agencies, was relevant on the issue of negligence.

As the Court of Appeals said:

[I]n tandem with the engineer's recommended implementation schedule, the source of funding supported the reasonableness of the timing and execution of the overall flood control plan. The evidence showed that participation in the federal grant program affected the pace at which Stanwood implemented its flood control plan because of federal permit, review, and land acquisition requirements.

*Bodin v. City of Stanwood*, 79 Wn. App. 313, 319, 901 P.2d 1065 (1995), *review granted*, 128 Wn.2d 1025 (1996). We agree with the Court of Appeals that the evidence was relevant to the timing and scope of the City's response to the risk posed by the lagoon. The trial court did not abuse its discretion in admitting the evidence.

Plaintiffs contend, though, that the evidence showed the City's particular financial circumstances and fiscal strategy, and maintain such evidence is not relevant to the reasonableness of the City's conduct, nor would it be evidence which a private person would be entitled to have admitted. While the precise issue in this case has not previously been addressed, Washington cases support our conclusion that the trial court did not abuse its discretion in ruling the evidence admissible. First, we have recog-

nized, for example, that municipalities may present evidence of practicality, cost or otherwise, of guardrails and barriers on roads and bridges. *E.g.*, *Bartlett v. Northern Pac. Ry. Co.*, 74 Wn.2d 881, 883, 447 P.2d 735 (1968); *Davison v. Snohomish County*, 149 Wash. 109, 113-14, 270 P. 422 (1928).[2] As noted above, "[t]he financial burden, technical considerations, and other factual circumstances" are all relevant factors to consider in whether a municipality has exercised reasonable care. *Berglund v. Spokane County*, 4 Wn.2d 309, 319, 103 P.2d 355 (1940). Further, in dicta in *McCluskey v. Handorff-Sherman*, 125 Wn.2d 1, 8, 882 P.2d 157 (1994), we noted that funding considerations may be relevant in defending the State against a negligence claim that it failed to make highway improvements. *See also Bailey v. Town of Forks*, 108 Wn.2d 262, 271, 737 P.2d 1257, 753 P.2d 523 (1987) (in deciding whether a municipality's action or inaction was reasonable, "the trier of fact can take into account the municipality's available resources and its resource allocation policy"). Washington cases thus demonstrate that financial considerations may be relevant to the issue of the reasonableness of a municipality's conduct. *Accord Armas v. Metropolitan Dade County*, 429 So. 2d 59, 61 n.7 (Fla. Dist. Ct. App. 1983) ("extent to which financial and manpower resources are available may be admissible for jury consideration as to whether reasonable care has been exercised" by municipality). The City here chose not to use money in its sewer construction fund, which it explains was viewed as a reserve for unanticipated expenditures for the total sewer system, but instead chose to seek outside funds.

---

[2]*See also Modrell v. State*, 179 Mont. 498, 501, 587 P.2d 405, 407 (1978) (State entitled to introduce cost evidence on the question of the reasonableness of its conduct in choosing to design, maintain, and repair a stretch of highway); *Cartier v. State*, 420 A.2d 843, 849 (R.I. 1980) ("[w]here cost is but one among many factors affecting the state's choice of a particular method of construction or repair, it is relevant to the reasonableness of the alternative taken and thus to the issue of negligence itself") (citing *Modrell,* 179 Mont. 498); *cf. Martinez v. Grant County PUD No. 2*, 70 Wn. App. 134, 851 P.2d 1248 (in negligence action against utility, trial court did not abuse discretion in admitting evidence of overall increased costs in making high voltage transmission line safer), *review denied*, 122 Wn.2d 1020 (1993).

Plaintiffs claim, though, that this case is like *Savage v. State*, 72 Wn. App. 483, 864 P.2d 1009 (1994), *aff'd in part and rev'd in part*, 127 Wn.2d 434, 899 P.2d 1270 (1995), and argue the evidence was inadmissible under the holding there that the trial court did not abuse its discretion in refusing to give an instruction that the availability of funding to the State could be considered in deciding whether parole officers' actions in supervising parolees were reasonable. The court reasoned that no authority was cited for the proposition that a private person or a corporation would be entitled to such an instruction. *Savage*, 72 Wn. App. at 495. Initially we note that refusal to give the instruction was upheld by this court on the basis that the State presented no evidence of its available resources or its resource allocation policy and there was accordingly insufficient evidence to justify the instruction. *Savage*, 127 Wn.2d at 448-49. Moreover, unlike *Savage*, the City here did not seek a specific instruction regarding its financial resources or its resource allocation policy, and none was given.

Further, this case is unlike *Cramer v. Van Parys*, 7 Wn. App. 584, 500 P.2d 1255 (1972), which plaintiffs rely upon for the proposition that a private party would not be entitled to present the evidence of attempts to obtain grant money. In that case, which involved alleged negligence for failure to remove snow and negligence per se for failing to comply with a stair rail ordinance at an apartment building, the court held that a landlord was not entitled to present evidence of his monthly income from the building to show that he could not afford someone to manage his apartments. The court said that "[e]vidence of the financial circumstances of the parties to an action is ordinarily immaterial and irrelevant[,]" and that "[t]he purpose for which the evidence was offered does not convince us of its materiality here. Financial hardship cannot be an excuse for failing to perform a duty undertaken for economic benefit." *Cramer*, 7 Wn. App. at 593-94. Here, the City never claimed that it could not afford to raise the dikes and has not claimed financial hardship,

nor is a municipality's operation of a sewage treatment facility undertaken for economic benefit. Further, as *Cramer* implicitly recognizes, evidence of financial circumstances may be material depending upon the situation. In this case, the evidence was material, considering all the facts and circumstances, including the conflicting evidence on the degree of risk and probability of harm, and the evidence that the City could meet that risk by continuing its floodfighting efforts while obtaining grant money to raise the dikes as part of an overall flood control strategy. While hindsight shows the City's course of action did not prevent the harm from being realized, a waiver of sovereign immunity does not render the governmental entity liable for every harm flowing from government action or inaction, but only that harm resulting from tortious misconduct. *Evangelical United Brethren Church of Adna v. State*, 67 Wn.2d 246, 253, 407 P.2d 440 (1965). The governmental entity does not become "a surety for every governmental enterprise involving an element of risk." *Id.*

Plaintiffs maintain, though, that a private person whose automobile has unsafe brakes would not be able to introduce evidence of attempts to obtain a loan to repair the vehicle in order to establish it acted reasonably in driving the automobile without repairing it. The analogy fails, for the same reason that plaintiffs' other arguments ultimately fail: it simply does not take into account that the reasonableness of defendant's conduct must be assessed in light of the circumstances under which the defendant acted or failed to act. In the situation involving unsafe brakes, the probability of harm is exceedingly high, with the alternatives to prevent that harm including refusal to drive the vehicle in such an unsafe condition or making the necessary repairs to eliminate any unreasonable risk. Delaying repairs for *whatever* reason while continuing to drive the vehicle quite simply poses an unreasonable risk of harm, and evidence of attempting to procure loan money for repairs is not relevant evidence tending to show the reasonableness of defendant's conduct in driving the vehicle with unsafe brakes. In this case,

there was a dispute about the degree of risk involved in delaying raising the height of the dike lagoons and the probability that harm would occur if the City continued its flood control and floodfighting programs. Moreover, while RCW 4.92.090 provides that a municipality is liable for its torts to the same extent as a private person, it must be remembered that assessing the reasonableness of a city's conduct involves considering the circumstances under which the city acts or fails to act. The particular facts and circumstances may be unlike those facing private defendants, but that does not render evidence of them inadmissible.

Because we hold that the evidence of the City's attempts to obtain grant money was admissible on the question of the reasonableness of its conduct, it follows that the trial court did not abuse its discretion by refusing to give two proposed instructions offered by plaintiffs which would have directed the jury that it could not consider the evidence.

Finally, plaintiffs seem to argue that the City was liable as a matter of law because the City created the dangerous condition, had more than a reasonable opportunity to correct the situation and failed to do so though it had money to do so. Negligence is generally a question of fact for the jury, and should be decided as a matter of law only "in the clearest of cases and when reasonable minds could not have differed in their interpretation" of the facts. *Young v. Caravan Corp.*, 99 Wn.2d 655, 661, 663 P.2d 834, 672 P.2d 1267 (1983); *accord Thomas v. Wilfac, Inc.*, 65 Wn. App. 255, 261, 828 P.2d 597, *review denied*, 119 Wn.2d 1020 (1992). This is not the rare case where the negligence issue should be taken from the jury; reasonable minds could differ on the question whether the City was negligent.

Plaintiffs also suggest that negligence should be found as a matter of law based upon *Anderson v. Rucker Bros.*, 107 Wash. 595, 183 P. 70, 186 P. 293, 8 A.L.R. 544 (1919), which they characterize as standing for the principle that

creating a pond which overflows in times of unusual or extraordinary flooding is done at the creator's peril. Plaintiffs unfortunately misread the case. The court in *Anderson* addressed only the question whether the dam builder builds and maintains the dam at his absolute peril as to all floods, including those he could not have anticipated; the court held he does not. *Id.* at 605-06. Later, *Anderson* was characterized by this court as holding that "one who impounds water is bound to exercise such reasonable care and caution in the construction, maintenance and operation of his works as a reasonably careful and prudent person, acquainted with the conditions, would exercise under like circumstances, but that he is not an insurer." *Longmire v. Yelm Irrigation Dist.*, 114 Wash. 619, 620, 195 P. 1014, *aff'd*, 117 Wash. 702 (1921). Neither *Anderson* nor *Longmire* supports plaintiffs' reading of *Anderson*.

The judgment in favor of the City of Stanwood is affirmed.

DURHAM, C.J., and DOLLIVER and GUY, JJ., concur.


ALEXANDER, J. (concurring) — ■ I am inclined to agree with the view advanced by Justice Johnson in his dissent to the effect that evidence of the City of Stanwood's efforts to obtain federal grant money to raise lagoon dikes was not relevant on the issue of the City's negligence. This evidence, at the very least, is a close relative to poverty defense evidence and has no place in a negligence action.

Notwithstanding the trial court's error in admitting the evidence, I agree with the majority that we should affirm. I reach that conclusion because, in my judgment, any error in admitting the evidence was harmless. The evidence occupied a very small portion of the lengthy trial that preceded the jury's verdict, and it was followed by uncontroverted evidence that the City had sufficient funds of its own to raise the level of the dikes before the floods of 1990. That being the case, the evidence that plaintiffs

complain about cannot be said to have been harmful. *See Brown v. Spokane County Fire Protection Dist. No. 1*, 100 Wn.2d 188, 196-97, 688 P.2d 571 (1983) (trial court's erroneous admission of audio tape into evidence was harmless and did not affect outcome due to testimony of other witnesses and extensive nature of trial). For similar reasons, it cannot be said that plaintiffs were harmed by the trial court's failure to instruct the jury that it could not consider the evidence of the City's efforts to obtain federal funds.

JOHNSON, J. (dissenting) — ■ This case presents the relatively straightforward question of whether evidence of the City's efforts to obtain grant money to raise lagoon dikes was relevant to the issue of negligence. However, the majority confuses the basic test regarding the admissibility of relevant evidence in a negligence action. The majority concludes the City's evidence of efforts to obtain federal and state grant funds was admissible to prove it acted reasonably. I disagree. The proper inquiry in this case is whether failure to raise the level of the surrounding dikes breached the duty to the landowners. Evidence of reasons or excuses for failure or delay in action is not relevant to the basic issues of duty and breach. For this reason, I dissent. To admit this evidence in this case allowed the City, in essence, to mount a poverty defense. Such a defense is not allowed in negligence actions because the duty of care owed to another does not change according to a party's financial situation.

Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Relevant evidence includes facts that offer direct or circumstantial evidence of an element of a claim or defense. *State v. Rice*, 48 Wn. App. 7, 12, 737 P.2d 726 (1987) (citing 5 KARL B. TEGLAND, WASHINGTON PRACTICE: *Evidence* § 83, at 171 (2d ed. 1982)). In other words, relevant evidence goes directly

to or implies an element of a claim or a defense. 5 KARL B. TEGLAND, WASHINGTON PRACTICE: *Evidence* § 83, at 231 (3d ed. 1989).

The basis of any negligence action is the failure to exercise reasonable care when one has a *duty* to exercise such care. RESTATEMENT (SECOND) OF TORTS § 282 (1965).[3] Here, if the City had a duty to use reasonable care in the operation of the sewer lagoon and to maintain the lagoon in a manner reasonably safe for adjacent property owners, evidence of financial inability to comply with that duty is not a defense. Lack of funds is not a defense because the duty remains the same regardless of financial resources. 19 EUGENE McQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 54.181 (3d ed. rev. 1994). Therefore, if lack of funds is not a defense, evidence of such is not relevant to the issue of duty.

The trial record in this case shows the City acknowledged it had enough money to cover the cost of raising the dikes. The City did not present a "poverty defense" in the sense of asking for a jury instruction stating the City had no duty to the plaintiffs because of a lack of funds. To the contrary, the City acknowledged it had a duty to the adjacent property owners to use reasonable care in the operation of the sewage lagoon. However, neither the City nor the majority explains what use the jury could have made of the evidence of efforts to obtain grant funds other than to infer it was reasonable for the City to delay raising the dikes because of its financial strategy and constraints. In other words, the majority appears to allow this evidence to imply a defense. But if the height of the dikes surrounding the lagoon presented an unreasonable risk of harm, the City had a duty to remedy the problem notwithstanding the availability of grant funds. *See King v. Starr*, 43 Wn.2d 115, 122, 260 P.2d 351 (1953) (evi-

[3]Ordinarily, the inability to exercise reasonable care because of lack of funds to make repairs is not a defense in a negligence action against a municipality. 19 EUGENE McQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS §§ 54.182, .129 (3d ed. rev. 1994); *see also Cramer v. Van Parys,* 7 Wn. App. 584, 593-94, 500 P.2d 1255 (1972).

dence of lack of insurance is a form of the "inadmissible plea of poverty") (quoting *Piechuck v. Magusiak*, 82 N.H. 429, 135 A. 534 (1926)).

As the majority points out, the standard of conduct that forms the basis of any negligence action is usually determined by a risk-benefit analysis. W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 31, at 173 (5th ed. 1984). Judge Learned Hand, in a much celebrated opinion, expressed this analysis as a "BPL" test. *United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir. 1947). The burden of adequate precautions must be less than the gravity of the resulting injury multiplied by the probability of the injury in order for the party to not be found liable in negligence. *Carroll Towing*, 159 F.2d at 173. Here, the timing of the City's action, because of problems in procuring grant funds, is simply not relevant to the analysis.

The majority states that our cases demonstrate financial considerations *may* be relevant to the issue of the reasonableness of a municipality's conduct. Majority at 738. However, in none of the cited cases has this court allowed a defendant to go beyond the introduction of costs, practicalities, or available resources to allow evidence of the *timing* chosen to incur costs as part of a budgetary consideration or overall financial strategy.

The majority cites *Berglund v. Spokane County*, 4 Wn.2d 309, 319, 103 P.2d 355 (1940), for the proposition that "[t]he financial burden, technical considerations, and other factual circumstances, are all factors to be considered in determining whether or not the county complied with its duty to use reasonable care." Majority at 734. However, in *Berglund*, no such evidence was available in the record. The court was merely stating that the construction of a sidewalk may be impractical for some reason and the above factors may be considered in determining whether the county met its duty to exercise reasonable care. *Berglund*, 4 Wn.2d at 319. Therefore, *Berglund* does not support the majority's proposition that evidence of efforts to obtain grant funds as part of a financial strategy is relevant to the issue of reasonable care.

The majority also relies on cases recognizing the admissibility of evidence of practicality and cost. *Bartlett v. Northern Pac. Ry. Co.,* 74 Wn.2d 881, 883, 447 P.2d 735 (1968); *Davison v. Snohomish County,* 149 Wash. 109, 113-14, 270 P. 422 (1928). Both these cases involved the duty of a municipality to keep its bridges in reasonably safe condition. The practicalities referred to actually involved matters of engineering and prohibitive costs. *Bartlett,* 74 Wn.2d at 883. Neither case suggests that practicalities include financial strategy or that costs include efforts to obtain grant funds.

The majority also cites *McCluskey v. Handorff-Sherman,* 125 Wn.2d 1, 882 P.2d 157 (1994), stating the court recognized funding considerations may be relevant in defending the State against a negligence claim of failure to make highway improvements. Majority at 738. The *McCluskey* court, after recognizing the State's equality with private parties in negligence actions, further explained that some common law defenses regarding the State's duty as to highways survive the Legislature's waiver of the defense of sovereign immunity. *McCluskey,* 125 Wn.2d at 9-10. The majority here ignores the fact *McCluskey*'s reasoning depended on the State's duty as to highway, not lagoon dike, maintenance. It appears the majority in *McCluskey* was attempting to convert the priority array statute into a legal defense against tort liability. *McCluskey,* 125 Wn.2d at 18 (Brachtenbach, J., concurring in part, dissenting in part). Finally, *McCluskey* does not factually involve evidence of funding considerations.

This case lost proper focus when the jury was allowed to consider monetary matters beyond "cost evidence." Just as a duty of care does not change because of financial strategy, cost evidence should not vary from defendant to defendant. If it is allowed to vary, the jury can apply these varying financial strategies or situations to the standard of care (duty) and, therefore, to the ultimate issue of liability.

Further, the majority states "[t]he particular facts and

circumstances may be *unlike* those facing private defendants, but that does not render evidence of them inadmissible." Majority at 741 (emphasis added). This logic contradicts the rule that government is liable to the same extent as a private person or corporation in negligence actions. RCW 4.92.090; RCW 4.96.010. The majority appears to misstate the Legislature's clear principle in holding evidence of the City's efforts to obtain grant funds relevant and admissible.

Evidence of attempts to obtain grant funds to prove reasonable care is not relevant under ER 401 in this case. Indeed, this evidence is the type of evidence ER 402 is designed to exclude. Evidence of financial strategy is not relevant to the basic issue of duty in a negligence action. The plaintiffs should have the opportunity to establish the negligence of the City without this evidence being admitted. I would reverse the opinion of the Court of Appeals and remand for a new trial.

SMITH, TALMADGE, and SANDERS, JJ., concur with JOHNSON, J.

Reconsideration denied February 20, 1997.