228 P.3d 20 (2009)
153 Wash.App. 296
Delbert ELLIOTT, Appellant,
v.
CUSTOM APPLE PACKERS, INC., a Washington Corporation, Respondent.
No. 27398-9-III.
Court of Appeals of Washington, Division 3, Panel Five.
November 10, 2009.
Publication Ordered December 17, 2009.
*21 Scott Michael Kane, Attorney at Law, Alex Fox, Lacy Kane, P.S., East Wenatchee, WA, for Appellant.
Stanley Allen Bastian, Jeffers Danielson Sonn & Aylward, P.S., Wenatchee, WA, for Respondent.
SCHULTHEIS, C.J.
¶ 1 Delbert Elliott sued his former employer, Custom Apple Packers, Inc., under Washington's Minimum Wage Act (MWA), chapter 49.46 RCW, alleging Custom violated the MWA by failing to pay him for overtime hours. A jury rejected Mr. Elliott's claims. Mr. Elliott appeals, contending the trial court erred by (1) concluding that the MWA's agricultural exemption encompassed labor in fruit packing facilities and (2) failing to give an instruction defining "management" under the MWA's executive exemption. We affirm.

FACTS
¶ 2 In 1989, Mr. Elliott began working for Custom, a facility that stores, packs, and ships fruit. Initially, his job duties included loading and unloading fruit from cold rooms and working on the loading dock. He was paid an hourly wage and overtime. In 1998, Custom promoted Mr. Elliott to shipping supervisor and changed him from an hourly to a salaried employee without overtime pay. In 2004, Custom terminated Mr. Elliott's employment, citing his lack of leadership skills and inefficient management of his department.
¶ 3 In 2006, Mr. Elliott filed a lawsuit against Custom for unpaid overtime wages under the MWA. The trial court denied Custom's two motions for summary judgment dismissal and the case proceeded to a jury trial.
¶ 4 At trial, witnesses testified about Mr. Elliott's job duties. James Brown, the current in-house counsel for Custom, testified that Mr. Elliott had hiring approval but did not have the authority to independently hire or fire employees. He could not recall whether Mr. Elliott ever disciplined another employee. Mr. Brown also testified that Mr. Elliott directed the work of three to four other employees on a daily basis, stating, "His duties were to manage the shipping dock, to manage the personnel[, and] to manage the logistics of moving the product from storage to set it up and then to put it on the trucks for transportation to the customers." 2 Report of Proceedings (RP) at 178. Mr. Brown also testified that Custom paid Mr. Elliott about $3,500 to $4,000 a month.
¶ 5 Nick Davis, a former salesman for Custom who had almost daily contact with Mr. Elliott, testified that as shipping foreman, Mr. Elliott checked on Mr. Davis' accounts, unloaded fruit from Mr. Davis' trucks, loaded other trucks, and was in charge of orders and quality control.
¶ 6 Samuel Moss, a manager at Custom, testified that Mr. Elliott supervised a crew on the shipping dock but that he also loaded trucks and performed maintenance work. He stated that Mr. Elliott had the authority to remove a worker from the dock and was in charge of the paperwork and accounts, and tracking employees' attendance.
¶ 7 Paul Wilson, who worked on the shipping dock during the spring of 2004, testified that Mr. Elliott supervised him and about four other people during that time. He stated, "He has us set up the orders, he gets the orders, he gives them to us, . . . we'd deboard them, transfer them onto pallets." 3 RP at 395. Jeff Vordahl, who worked on the loading dock between 1996 and 2006, testified that Mr. Elliott did "everything," including loading and unloading trucks, reviewing orders, selecting and setting up loads, loading boxcars and ocean containers, printing shipping *22 tickets, setting up cold rooms for storage, and storing the fruit. 3 RP at 422.
¶ 8 Mr. Elliott testified that his job did not significantly change after he became shipping supervisor and that he continued to spend most of his time on a forklift. He stated, "Basically the office would tell me what needed to be done and they'd tell me how to do it and I would get the job done . . . [b]y either doing it myself or having other people do it." 3 RP at 515-16.
¶ 9 On the last day of trial, Custom moved for a directed verdict under CR 50(a)(1),[1] arguing that the evidence established that Mr. Elliott was not entitled to overtime pay under the MWA's exemptions for agricultural employees and executives. Mr. Elliott countered that the agricultural exemption did not apply to him, pointing to Cowiche Growers, Inc. v. Bates, 10 Wash.2d 585, 117 P.2d 624 (1941), which held that fruit warehouse workers were not "agricultural laborers" under Washington's Unemployment Compensation Act (Unemployment Act), Title 50 RCW.
¶ 10 The trial court denied Custom's motion, concluding there was sufficient evidence to submit Mr. Elliott's claims to a jury. It also rejected Mr. Elliott's argument, concluding, "I think the agricultural exemption as it's written by the legislature applies to folks who engage in those duties regardless of who they're employed by. Folks for whom their work is characterized by that work, or primarily that work." RP (July 10, 2008) at 23.
¶ 11 During discussion of jury instructions, Mr. Elliott proposed an instruction defining a "manager" under the executive exemption as "a person who has the authority and power to affect hours, wages, and working conditions" of the employer's workers. Clerk's Papers (CP) at 351. The trial court rejected the proposed instruction, finding the case law cited by Mr. Elliott inapposite.
¶ 12 The jury concluded that Mr. Elliott was not entitled to overtime pay under the MWA. Mr. Elliott appeals.

ANALYSIS
¶ 13 Mr. Elliott first contends that the trial court erred in concluding that the MWA's agricultural exemption encompasses labor in fruit packing and shipping facilities. Relying primarily on Cowiche, Mr. Elliott contends that the MWA's overtime exemption for agricultural labor is confined to labor performed on a farm and does not apply to labor in a fruit packing warehouse.
¶ 14 We review issues of statutory interpretation de novo. Cerrillo v. Esparza, 158 Wash.2d 194, 199, 142 P.3d 155 (2006). We look to the statute's plain language to fulfill its obligation to give effect to legislative intent. Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n, 123 Wash.2d 621, 629, 869 P.2d 1034 (1994). When a statute is unambiguous, we derive the legislature's intent from the plain language alone. State v. Watson, 146 Wash.2d 947, 955, 51 P.3d 66 (2002). A statute is ambiguous if it can be interpreted in more than one way. Vashon Island Comm. for Self-Gov't v. Wash. State Boundary Review Bd. for King County, 127 Wash.2d 759, 771, 903 P.2d 953 (1995).
¶ 15 The statute at issue here is not susceptible to more than one interpretation. RCW 49.46.130(2)(g)(ii) exempts from overtime pay any person employed "in packing, packaging, grading, storing or delivering to storage, or to market or to a carrier for transportation to market, any agricultural or horticultural commodity." This language is clear and does not require construction beyond the plain meaning of the words.
¶ 16 Further, Cowiche is distinguishable. In that case, the issue was whether labor in a fruit packing warehouse, which included washing, packing, and storing of fruit, constituted "agricultural labor" under Washington's Unemployment Act. Cowiche, 10 Wash.2d at 587-88, 595, 117 P.2d 624. Noting that the Unemployment Act specifically defined "agricultural labor" as "labor performed on a farm," the court concluded that *23 the work in the fruit packing houses was more akin to industrial labor than agricultural labor, and therefore subject to the protections of the Unemployment Act. Id. at 605, 611-12, 117 P.2d 624.
¶ 17 This interpretation of "agricultural labor" has no application here. In contrast to the Unemployment Act, the MWA explicitly exempts from overtime pay persons who package, store, or deliver agricultural commodities. Accordingly, the trial court did not err in concluding that the MWA's agricultural exemption encompasses work in fruit packing facilities.
¶ 18 Mr. Elliott next assigns error to the trial court's refusal to give his proposed instruction defining a "manager" for purposes of the MWA's executive exemption as "a person who has the authority and power to affect hours, wages, and working conditions." CP at 351.
¶ 19 The court's executive exemption instruction provided:
The Washington Minimum Wage Act exempts from the overtime wages requirement individuals employed in a bona fide executive capacity. On its claim that Delbert Elliott was exempt from overtime pay requirements under this provision, Custom Apple Packers, Inc. has the burden of proving each of the following propositions by a preponderance of the evidence:
(1) That Delbert Elliott was paid a salary of at least $250.00 per week;
(2) That his primary duty consisted of the management of defendant's shipping department in the Quincy plant; and
(3) That he customarily and regularly directed the work of two or more full-time employees in the shipping department.
CP at 574 (instruction 7).
¶ 20 Mr. Elliott does not challenge this instruction. However, he contends that without an augmenting instruction defining "management," the jury is left to speculate as to the term's meaning.
¶ 21 "`The number and specific language of the instructions are matters left to the trial court's discretion.'" Bodin v. City of Stanwood, 130 Wash.2d 726, 732, 927 P.2d 240 (1996) (internal quotation marks omitted) (quoting Leeper v. Dep't of Labor & Indus., 123 Wash.2d 803, 809, 872 P.2d 507 (1994)). We review jury instructions in their entirety, and they are sufficient if they (1) permit each party to argue his theory of the case; (2) are not misleading to the jury; and (3) when read as a whole, properly inform the trier of fact of the applicable law. Hue v. Farmboy Spray Co., 127 Wash.2d 67, 92, 896 P.2d 682 (1995). When these conditions are met, it is not error to refuse to give an augmenting instruction. Bodin, 130 Wash.2d at 732, 927 P.2d 240.
¶ 22 Instruction 7 is a correct statement of the law. The MWA requires employers to pay overtime wages to an employee who works more than 40 hours a week unless the employee works in a "bona fide executive . . . capacity." RCW 49.46.010(5)(c). The accompanying regulations provide that when an employee earns a salary of at least $250 per week, the test to determine whether the employee falls within the executive exemption is whether the employee's primary duty consists of the management of the department in which he is employed and whether he regularly directs the work of two or more employees. WAC 296-128-510(6). Instruction 7 accurately restates this test.
¶ 23 Further, the instructions in their entirety adequately apprised the jury of the applicable law. In addition to instruction 7, the court instructed the jury that:
Exempt status is a legal determination based on the employee's primary duties. Job title, job description, or perceptions of the employee are not determinative. The application of an exemption depends on the nature of the employee's work and not the character of the employer's business.
CP at 576 (instruction 9).
¶ 24 Instructions 7 and 9 allowed Mr. Elliott to argue his theory of the case, which was that he was not employed in a management position and that his primary duties were not supervisory. During closing argument, Mr. Elliott argued that he did not have the power to hire or fire other employees or affect the terms, conditions, or hours of their *24 work. He also argued that he did not have the authority to discipline or direct the work of other employees.
¶ 25 Because the instructions were not misleading, allowed Mr. Elliott to argue his theory of the case, and properly informed the jury of the applicable law, they were sufficient. Accordingly, the court did not abuse its discretion to refuse to give a detailed augmenting instruction. Bodin, 130 Wash.2d at 732, 927 P.2d 240.
¶ 26 Affirmed.
WE CONCUR: BROWN and KULIK, JJ.
NOTES
[1] CR 50(a)(1) provides in pertinent part: "If, during a trial by jury, a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find or have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against the party on any claim . . . that cannot under the controlling law be maintained without a favorable finding on that issue."